FIRST NATIONAL BANK OF KENOSHA, Trustee, Appellant, v. SCALZO and wife, Respondents. [Case No. 608.]
FIRST NATIONAL BANK OF KENOSHA, Trustee, and another, Appellants, v. SCALZO and wife, Respondents. [Case No. 609.]

*Nos. 608, 609 (1974). Argued October 30, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 472.)

694

For the appellants there was a brief by *Foley & Capwell, S. C.* of Racine, attorneys, and *Phillips, Richards & Mayew* of Kenosha, of counsel, and oral argument by *Rex Capwell.*

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo L. Vaudreuil.*

HANLEY, J. Two issues are presented on this appeal:

1. Could the trial court properly consider the equitable remedy of reformation on the basis of allegations of fraud not raised prior to trial?

2. Was there a basis for reformation?

*Additional remedy.*

Although the trial court indicated that it did not have the authority to consider allegations not pleaded or

specifically cited until the post-trial briefs, it did consider the question of fraud as a basis for equitable relief. It is unclear whether the court considered that the issue had been properly raised without prejudice to the defendant. Since fraud was not found to exist, no finding was made on the propriety of considering the issue.

The pleadings state that relief was requested on the basis of mutual mistake. At common law, the bill in equity was given stringent analysis:

"No principle of equitable jurisprudence is better settled than that the complainant must recover, if he recover at all, upon the case made by his bill. The proofs must correspond with the allegations made, and must sustain the statements and charges set forth in the bill, or no relief can be granted, however strongly the proofs may show that he is entitled to some relief." *Flint v. Jones* (1856) 5 Wis. 424, 427.

Procedural distinctions between legal and equitable actions in Wisconsin have been abolished, sec. 260.08, Stats., and variance between pleadings and proof is currently controlled by sec. 263.28:

"**Variances, materiality.** (1) No variance between the allegation in a pleading and the proof shall be deemed material unless it misleads the adverse party to his prejudice. Whenever it shall be proved to the satisfaction of the court that a party has been so misled, and in what respect he has been misled, the court may order the pleading amended upon such terms as may be just.

"(2) When the variance is not material, the fact shall be found in accordance with the evidence and the court may order an amendment without costs."

The appellants contend that sec. 263.28, Stats., allows disregarding a variance between the allegation in a pleading and the proof submitted when no objection is made to such proof.

Respondents direct attention to another statute that should also be considered on the topic of proof variance

from pleadings. Sec. 263.31, Stats., provides that when the allegation of a cause of action is unproved in its entire scope or meaning, a failure of proof rather than variance under sec. 263.28 results. This section, however, must be read in conjunction with sec. 269.52 which, as interpreted in *Duffy v. Scott* (1940), 235 Wis. 142, 148, 292 N. W. 273, 129 A. L. R. 487:

". . . softens the rigor of sec. 263.31, and renders it inapplicable in cases where evidence received without objection and not denied and not claimed to be subject to refutation, constitutes a cause of action other than that stated in the complaint."

In this case the record is barren of any indication that a motion to amend the pleadings was made. The claimed new basis for the equitable remedy was raised in a post-trial brief, which for argument purposes can be taken as an indirect request for an amendment. Such proposed change was not the correction of a mere "variance" but was in reality an alternative theory of remedy based partially on the plaintiff's failure to prove mutual mistake and based partially on Scalzo's strong refutation of any shared misconception of the boundaries of the transferred property. Thus the proper statutes and their fostered case law to be considered are secs. 263.31, 269.52 and 269.44, Stats.

*Wipfli v. Martin* (1967), 34 Wis. 2d 169, 148 N. W. 2d 674, established that an amendment would not be allowed if it prejudiced the defendant. This unfairness could take the form of confrontation by issues of which it was unaware or unprepared to challenge. In such cases, the amendment could be denied or granted with a continuance for the defendant's preparation. Attempts to amend after the trial present unique problems of prejudice that cannot be cured and may dictate the necessity to refuse the amendment. *See: Johnson v. Chemical Supply Co.* (1968), 38 Wis. 2d 194, 205, 206, 156 N. W. 2d 455.

In regards to Mrs. Tanner's suit for recovery of the southern plot, Scalzo indicated in a pretrial deposition that he was aware of the boundaries as listed on the offer to purchase and that he relied on them. He did admit that he believed Mrs. Tanner had a possible misconception of the extent of the land enumerated by the legal description, but only by inference from her conversation. In refuting the allegation that he shared Mrs. Tanner's mistake as to the extent of the land sold, Scalzo's trial testimony strongly reiterated his reliance on the legal description and repeated his awareness of Mrs. Tanner's possible error. Since the trial court refused to sustain the allegation of mutual mistake, the plaintiffs in this suit are attempting to seize Scalzo's trial testimony refuting mutual mistake and turn it into a claim for fraud. This posture was known to them prior to trial. As an alternative theory of remedy, it could have been offered as an amendment at a time when Scalzo would be warned to more thoroughly explain the nature of his impressions. It would have alerted him to explain his reliance on the legal description and officers of the bank. as Mrs. Tanner's agents rather than attempt to clarify her possible error.

As for the western plot, there is no evidence on the record that demonstrates Scalzo would be prejudiced by the added theory. This is so, however, because there is no evidence that such a theory could aid the plaintiff bank. Scalzo at all times has given testimony that he knew the garage area was within the property sold. The bank produced agent witnesses who testified to a statement by Scalzo, after the sale, of surprise that this plot was within his purchase. He denied ever saying this and the trial court agreed with his version. There is no testimony indicating that prior to the sale Scalzo knew that such property was not to be transferred and that he deliberately refrained from indicating an error in the legal description. The bank's proffered testimony in fact

was that Scalzo evidenced surprise, but no implication of fraud on his part arises from their failure to prove this allegation. Scalzo's denial is consistent with his assertions that he believed the garage area to be within his purchase. Testimony as to an explanation to the contrary in his presence was refuted not only by him but by Mrs. Tanner.

In this latter case, the fraud theory is totally unproved. Such a theory is more applicable to Mrs. Tanner's suit although prejudice to the defendant is more potential by the faliure to timely acquaint him with that allegation. The trial court, however, did consider the issue and found that it was unsupported; thus no need arose to consider the detriment to Scalzo by its consideration. We think the trial court's conclusion was correct.

### Reformation.

It was on the alleged post-sale surprise of Scalzo that the bank based its reformation claim as to the garage area. Mutual mistake is, of course, a basis for the equitable remedy of reformation. *Kovacs v. Hoag* (1953), 263 Wis. 139, 141, 142, 56 N. W. 2d 829; Hanbury, *Modern Equity* (1957), ch. 26, p. 609. The trial court determined that the plaintiffs had not sustained their burden of proof, evidently disagreeing with the bank witnesses' appraisals of Scalzo's knowledge as to the garage area. In equity cases, the test on review is whether the findings made are contrary to the great weight and clear preponderance of the evidence. *Nagle Motors v. Volkswagen N. C. Distributor* (1971), 51 Wis. 2d 413, 423, 187 N. W. 2d 374. The bank abandoned any attempt to reassert mutual mistake on such slim proof.

They have proposed the alternative theory of mistake on their part and fraud on the part of Scalzo. *See: Langer v. Stegerwald Lumber Co.* (1952), 262 Wis. 383, 391a, 55 N. W. 2d 389, 56 N. W. 2d 512; Hanbury, *supra,* at page 604.

As mentioned, there is not sufficient evidence to support this remedy for the western area. Scalzo's testimony concerning his inference of error on Mrs. Tanner's part is mainly directed to the southern plot and is too vague to raise an inference about the garage area. Although there was testimony that a boundary discussion, including the western boundary, was had prior to the closing, Scalzo could not recall it and plaintiff Tanner denied it. Some inference is urged by the natural tie of the garage to the house and its insurance with the house, but this would hardly establish fraud.

The fraud being alleged is not the equivalent of the tort action for deceit, of course. Fraud as a basis for equitable relief can be maintained from either willful or innocent misrepresentations. Prosser, *Law of Torts* (4th ed.), pp. 687, 688, sec. 105. The trial court acknowledged the split nature by referring to "actual" or "constructive" fraud and definitely concluded that the former was not involved.

This overlapping "fraud" is most strongly raised in reference to the southern plot. Scalzo admitted that he, as well as DuPont, had the impression that Mrs. Tanner was in error as to the amount of land south of her house that would be excluded from the sale. Since he was informed that she had to approve the sale, appellants place great reliance on sec. 505, Restatement, 2 *Contracts:*

"Except as stated in secs. 506, 509–511, if one party at the time of the execution of a written instrument knows not only that the writing does not *accurately* express the intention of the other party as to the terms to be embodied therein, *but knows what that intention is,* the latter can have the writing reformed so that it will express that intention." (Emphasis added.)

No mention is made, however, of the included sec. 511:

"It is essential in order to obtain a decree rescinding or reforming a written conveyance, contract, assignment or discharge for mistake, that the facts necessary for the

allowance of the remedy shall be proved by clear and convincing evidence and not by a mere preponderance."

This is also the burden of proof in Wisconsin. *Bailey v. Hovde* (1973), 61 Wis. 2d 504, 509, 511, 213 N. W. 2d 69; Wisconsin Jury Instructions—Civil, Part I, 205.

This burden of proof problem becomes particularly troublesome because of the failure of the plaintiffs to raise this theory until after the evidence was adduced. It is clear that Mrs. Tanner did not agree with the boundaries established by the conveying deed. Scalzo admits to an impression that she was in error. The appellants characterize these facts as placing a duty on Scalzo to Mrs. Tanner and the failure to meet this duty equates with equitable fraud.

Even in such a simplistic structure, we find it difficult to reach that conclusion. The initial correct postulate is that silence can be a form of equitable fraud. Hanbury, *supra,* at 625. It often is a form of legal deceit also, especially where vendors of goods are involved. *Olson v. Skroch* (1924), 182 Wis. 448, 196 N. W. 767. The plaintiffs, however, are seeking to impose an equitable duty on the purchaser to inform the seller of his possible rather than known errors, or accept the future possibility of equitable action.

While this theory in abstract may be sound, it avoids the factual problems which the burden of proof raises. Scalzo and Mrs. Tanner were not dealing solely with one another. DuPont, the bank's employee and apparent agent as far as Scalzo should be held to know, had physically assisted the defendant in determining the bounded land which undisputedly was at all times held out as for sale and which was listed in the deed and offer to purchase. Scalzo claims little reliance on his dealings with Mrs. Tanner, obviously because the real transaction was being conducted by the bank which had refused his prior offers. No evidence was adduced that

the bank shared her mistaken impressions as to the property and demonstrated such mistake to Scalzo also. At trial, the bank officers took the position that the mistake as to the southern area did not involve them. It is not realistic that Scalzo should assume that Mrs. Tanner's professional counselors and trustees of her late husband's trust were ignorant or mistaken as to her wishes, such that he must assume the task of interpreting their own legal description to them or to her. His rejected offer to pay half the cost of a survey, which infers questions as to the exact boundaries of a plot even if not so precisely stated, at least alerted the bank to check the propriety of the legal description.

We conclude, on the facts as adduced, there is no failing on the part of Scalzo which could be construed to be inequitable conduct toward Mrs. Tanner. Fraud must be proved by clear and convincing evidence, and as noted by the trial court, the plaintiffs failed to prove their case. Here the problem resulted from the bank's reliance on its own plat of survey from which the legal description used in the deed was prepared by the bank's counsel.

*By the Court.*—Judgments affirmed.