Dale REBERNICK, Sandra Rebernick, and Gregory Rebernick, by his Guardian ad Litem, Plaintiffs-Appellants†

v.

WAUSAU GENERAL INSURANCE COMPANY, Defendant,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 04–0487. Oral argument December 2, 2004.—Decided December 14, 2004.*

2005 WI App 15

(Also reported in 692 N.W.2d 348.)

† Petition to review granted 3-8-2005.

461

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas A. Ogorchock* of *Miller & Ogorchock, S.C.*, of Milwaukee. There was oral argument by *Thomas A. Ogorchock*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Emile H. Banks, Jr.*, of *Emile Banks & Associates, LLC*, of Milwaukee. There was oral argument by *Emile H. Banks, Jr.*

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J.  Dale Rebernick, Sandra Rebernick, and Gregory Rebernick appeal the trial court's order granting American Family Mutual Insurance Company's motion for summary judgment and dismissing the Rebernicks' action. The Rebernicks sought underinsurance-motorist coverage under their American Family umbrella policy even though the policy expressly declared that it did not cover underinsured-motorist claims. We affirm.

**I.**

¶ 2.  Dale Rebernick was seriously injured when the lawn mower he was riding was hit by a car driven by Denelius Heard. Heard had $25,000 in liability insurance. Heard's insurer paid Rebernick the $25,000, and Rebernick collected the maximum $100,000

underinsured-motorist coverage provided by his American Family automobile policy. He then sought more money from American Family under the umbrella policy. The only mention in the umbrella policy of underinsured-motorist coverage is the following clause: **"Uninsured/Underinsured Motorists. We** will not cover any claims which may be made under Uninsured Motorists Coverage, Underinsured Motorists Coverage or similar coverage, unless this policy is endorsed to provide such coverage." (Bolding in original.)

¶ 3.　The Rebernicks contend that the American Family umbrella policy should be reformed to provide underinsured-motorist coverage because, they assert, American Family violated Wis. Stat. § 632.32(4m) by not telling them that the umbrella policy could have provided such coverage. The trial court held that reformation was not warranted, noting that the Rebernicks had purchased underinsured-motorist coverage in their underlying American Family automobile policy, and that therefore "they obviously knew of its existence." Accordingly, the trial court ruled that "the intent and purpose" of § 632.32(4m) were "fulfilled."

## II.

### A.

¶ 4.　As we have seen, the trial court decided this case on summary judgment. The parties agree that there are no contested facts and that this case presents only an issue of law. Thus, our review is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987) (appellate review of summary-judgment determinations is *de novo*).

464

■

¶ 5. WISCONSIN STAT. § 632.32(4m) provides, as material here:

(a) 1. An insurer writing policies that insure with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by a person arising out of the ownership, maintenance or use of a motor vehicle shall provide to one insured under each such insurance policy that goes into effect after October 1, 1995, that is written by the insurer and that does not include underinsured motorist coverage written notice of the availability of underinsured motorist coverage, including a brief description of the coverage. An insurer is required to provide the notice required under this subdivision only one time and in conjunction with the delivery of the policy.[1]

. . . .

(b) Acceptance or rejection of underinsured motorist coverage by a person after being notified under par. (a) need not be in writing. The absence of a premium payment for underinsured motorist coverage is conclusive proof that the person has rejected such coverage. The rejection of such coverage by the person notified under par. (a) shall apply to all persons insured under the policy, including any renewal of the policy.

(c) If a person rejects underinsured motorist coverage after being notified under par. (a), the insurer is not required to provide such coverage under a policy that is renewed to the person by that insurer unless an insured under the policy subsequently requests such underinsured motorist coverage in writing.

---

[1] The Rebernicks' umbrella policy and their underlying automobile policy became effective in 2001, May 7 and April 29, respectively.

(Footnote added.) Additionally § 632.32(1) provides:

> Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person.

As with our *de novo* review of summary-judgment determinations, a trial court's application of statutes to facts that are not contested is also reviewed by us *de novo, see State v. Wilson,* 170 Wis. 2d 720, 722, 490 N.W.2d 48, 50 (Ct. App. 1992), *denial of habeas corpus aff'd, Wilson v. McCaughtry,* 994 F.2d 1228 (7th Cir. 1993), as is an interpretation of an insurance contract, *Martin v. Milwaukee Mutual Insurance Co.*, 146 Wis. 2d 759, 766, 433 N.W.2d 1, 3 (1988).

■

¶ 6.   We have recently recognized:

> Application of statutes requires that we "faithfully give effect to the laws enacted by the legislature." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124 ("It is the enacted law, not the unenacted intent, that is binding on the public."). In doing so, "[w]e assume that the legislature's intent is expressed in the statutory language." *Id.*, 2004 WI 58, ¶ 44, 271 Wis. 2d at 662, 681 N.W.2d at 124. If that language is clear, we apply it as it reads because the words used by the legislature are the best evidence of its intent. *Id.*, 2004 WI 58, ¶ 45, 271 Wis. 2d at 663, 681 N.W.2d at 124. Further, we may use context to derive the meaning of words that, when viewed in isolation, appear unclear. *Ibid.* External sources of legislative intent, that is matters not appearing in statutes themselves, *id.*, 2004 WI 58, ¶ 50, 271 Wis. 2d at 666, 681 N.W.2d at 125, can help to discern legislative intent when the statutory language is not clear on its

face, *id.*, 2004 WI 58, ¶¶ 50–51, 271 Wis. 2d at 666–667, 681 N.W.2d at 125–126. External sources may also help "confirm or verify a plain-meaning interpretation." *Id.*, 2004 WI 58, ¶ 51, 271 Wis. 2d at 666–667, 681 N.W.2d at 126.

*State v. Swiams*, 2004 WI App 217, ¶ 5, 277 Wis. 2d 400, 404-405, 690 N.W.2d 452, 454. Additionally, statutes should not be applied with a hyper-technicality that swamps common sense. *Wisconsin Citizens Concerned for Cranes & Doves v. Wisconsin Dep't of Natural Res.*, 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 329, 677 N.W.2d 612, 617 (statutes should be read and applied to avoid absurd results). We examine the applicable provisions of WIS. STAT. § 632.32 and the Rebernicks' American Family policies against this background.

### B.

¶ 7. As the Rebernicks contend, WIS. STAT. § 632.32(1) makes the entire section applicable to "every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person." Both the underlying automobile policy and the umbrella policy thus fall within § 632.32's purview—each is: (1) an insurance policy that (2) insures against liability for loss or damage. Additionally, § 632.32(4m) itself has language that makes it applicable to American Family, the policies' issuer:

• American Family writes insurance for motor vehicles that are either "registered or principally garaged" in Wisconsin, and

• that insurance protects "against loss resulting from liability imposed by law for bodily injury or death

suffered by a person arising out of the ownership, maintenance or use of a motor vehicle."

*See* § 632.32(4m)(a)1. Thus, by virtue of both §§ 632.32(1) and 632.32(4m)(a)1., § 632.32(4m) applies to each policy.

██

¶ 8.   As we have seen, our task in applying statutes is to give effect to what the legislature wanted to accomplish, and, unless the statutory language is ambiguous, the words of a statute are the best evidence of the legislature's intent. WISCONSIN STAT. § 632.32(4m) is not ambiguous:   if a covered insurance policy does not provide underinsured-motorist coverage, the insurer must notify the insured of its "availability" and must give to the insured "a brief description of the coverage." But the notice in connection with any policy need only be given once. § 632.32(4m)(a)1. ("An insurer is required to provide the notice required under this subdivision only one time and in conjunction with the delivery of the policy."). The legislature wanted insurance companies to tell policy holders that they could buy underinsured-motorist coverage, and once told, the insurance company does not have to tell them again. Moreover, if the policy holder does not buy underinsured-motorist coverage after being told of its availability, the insurance company does not have to give the availability/description notice again in connection with either that policy or any renewals. *See* § 632.32(4m)(c) ("If a person rejects underinsured motorist coverage after being notified under par. (a), the insurer is not required to provide such coverage under a policy that is renewed to the person by that insurer unless an insured under the policy subsequently requests such underinsured motorist coverage in writing.").

468

¶ 9.   As noted, the umbrella policy's reference to underinsured-motorist coverage declares that there is none "unless this policy is endorsed to provide such coverage." This sufficiently tells the policy holder that underinsured-motorist coverage is available by endorsement. We thus must turn to the second mandate of WIS. STAT. § 632.32(4m), namely that there be "a brief description of the coverage." The umbrella policy does not give any description of underinsured-motorist coverage. But that does not end our inquiry.

¶ 10.   As the trial court pointed out, on the umbrella policy's effective date the Rebernicks were already covered by an underlying automobile policy also issued by American Family. The underlying automobile policy not only gave them underinsured-motorist coverage but it also defined the coverage in a special full-page endorsement attached to the policy. That endorsement further explained: "**Underinsured motor vehicle** means a **motor vehicle** which is insured by a liability bond or policy at the time of the accident which provides **bodily injury** liability limits less than the limits of this Underinsured Motorists coverage." (Bolding in original.) The endorsement told the insureds:   "**You** have this coverage if Underinsured Motorists Coverage is shown in the declarations." The declarations page set out the following under the heading "**Coverages and Limits Provided**" (bolding in original; uppercasing omitted):

ENDORSEMENT-SEE BELOW

UNDERINSURED MOTORISTS COVERAGE -- BODILY INJURY ONLY
$100,000 EACH PERSON $300,000 EACH ACCIDENT

(Typography as in original.)

469

¶ 11. Unlike uninsured-motorist coverage, which every automobile insurance policy must have, WIS. STAT. § 632.32(4)(a), underinsured-motorist coverage is voluntary. Thus, a fair conclusion, which the Rebernicks have not disputed by any summary-judgment evidentiary material, is that the Rebernicks voluntarily asked to have underinsured-motorist coverage in the underlying American Family automobile policy. This is further supported by the fact that their underlying policy had, as we have seen, limits of $100,000 underinsured-motorist coverage for each person, and $300,000 for each accident, although the statutory floor is only $25,000 and $50,000, respectively. *See* § 632.32(4)(a)1. Indeed, the Rebernicks have not disputed on appeal the trial court's conclusion that they "obviously knew" about underinsured-motorist coverage. Nevertheless, they seek reformation of the umbrella policy to give them underinsured-motorist coverage.

¶ 12. Reformation of an insurance contract may be warranted *if* the policy as issued reflects a mutual mistake by the contracting parties. *Jeske v. General Accident Fire & Life Assurance Corp.*, 1 Wis. 2d 70, 78, 87, 83 N.W.2d 167, 172, 176 (1957); *see also First Nat'l Bank of Kenosha v. Scalzo*, 70 Wis. 2d 691, 700, 235 N.W.2d 472, 477 (1975) (deed of trust). Actual knowledge, of course, negates the "mistake" element. *See Jeske*, 1 Wis. 2d at 92–93, 83 N.W.2d at 179; *Scalzo*, 70 Wis. 2d at 700, 235 N.W.2d at 477; *cf. Illinois Cent. R.R. Co. v. Blaha*, 3 Wis. 2d 638, 645, 89 N.W.2d 197, 200–201 (1958) (timely formal notice not required where indemnitor had timely actual knowledge of both claim and that indemnitee was seeking to hold indemnitor liable).

470

¶ 13. The Rebernicks knew both: (1) that their umbrella policy could give them underinsured-motorist coverage *via* an endorsement to that policy, and (2) what underinsured-motorist coverage encompassed. As the trial court recognized, there is no warrant in the context of an equitable reformation action to relieve the Rebernicks of the consequences of their decision to forego an underinsured-motorist coverage endorsement in their American Family umbrella policy, thereby requiring American Family to pay for a risk it did not assume. *See Reznichek v. Grall*, 150 Wis. 2d 752, 758, 442 N.W.2d 545, 548 (Ct. App. 1989) ("insurers should not be bound to risks which they did not contemplate and for which they received no premium"). Accordingly, we affirm the trial court's order dismissing the Rebernicks' action against American Family.

*By the Court.*—Order affirmed.

¶ 14. KESSLER, J. (*concurring in part; dissenting in part*). I agree with the Majority that WIS. STAT. § 632.32(4m)(a)1. required American Family to give the Rebernicks notice that they could purchase underinsured motorist coverage as part of their umbrella liability policy and required American Family to provide a brief description of the coverage. Majority, ¶¶ 1–8. However, I disagree with the Majority, ¶¶ 9–11, that American Family met these requirements. Therefore, I respectfully dissent from that portion of the Majority opinion. Having come. to a different conclusion about what is required of American Family by § 632.32(4m), I believe the Rebernicks are entitled to a meaningful remedy for the clear breach of statutory requirements. Thus, I would require American Family to comply now with the notice provisions, and would permit the Reber-

nicks to decide upon receipt of the notice whether to purchase underinsured motorist coverage as an addition to their umbrella policy retroactive to the date that the umbrella policy was first delivered.

¶ 15. Pursuant to Wɪs. Sᴛᴀᴛ. § 632.32(4m)(a)1., if the insurer issues an insurance policy insuring against "liability for loss or damage . . . caused by any motor vehicle" and that insurance "does not include underinsured motorist coverage" then the insurer must provide to the insured "written notice of the availability of underinsured motorist coverage, including a description of the coverage." Here, it is undisputed that the Rebernicks' umbrella policy did not include underinsured motorist coverage, but could have. It is also undisputed that American Family never sent the Rebernicks a separate written notice that such coverage was available with the umbrella policy.

¶ 16. The Majority concludes that a single clause within the umbrella policy satisfies the Wɪs. Sᴛᴀᴛ. § 632.32(4m)(a)1. requirement of written notice of the availability of underinsured motorist coverage. Majority, ¶ 9. The clause appears in the record on the fourth page of the umbrella policy as the 21st of 25 listed exclusions. It provides: "**Uninsured/Underinsured Motorists. We** will not cover any claims which may be made under Uninsured Motorists Coverage, Underinsured Motorists coverage or similar coverage, unless this policy is endorsed to provide such coverage." (Bolding in original.) I disagree that the existence of this clause alone, buried in small type in the midst of a long policy, satisfies § 632.32(4m)(a)1. Nothing in this record establishes that an insured reading this clause would understand that such additional coverage was being offered for sale to the insured, or that such coverage is available in this policy.

¶ 17. Even if the insured has already purchased underinsured motorist coverage in a primary automobile policy, nothing in the record suggests that the same terms and conditions were available in the umbrella policy. It is undisputed that American Family provided no description of the underinsured motorist coverage it would sell the Rebernicks as part of their umbrella policy.[1] The description of underinsured motorist coverage provided to the Rebernicks with their primary policy is not a sufficient description of underinsured motorist coverage that could be available with an umbrella policy. Without a separate description of what is covered in an underinsured motorist endorsement in an umbrella policy, the insured has no way to know whether such coverage is the same or different from the insured's automobile liability rider, or what the price will be. Likewise, an insured cannot know that additional coverage is available without being specifically told that it is. The record does not establish whether underinsured coverage costs the same or whether it applies in the same situations when it is an endorsement to an umbrella policy rather than an automobile liability policy. What we cannot discern from the record, we certainly should not conclude are facts known to the Rebernicks.

¶ 18. I conclude the American Family policy has failed to give either sufficient notice of the availability of an underinsured motorist coverage endorsement to the umbrella policy, or a sufficient description of this

[1] American Family admitted at oral argument that it does not believe it is ever required to provide either notice of, or a policy term description of, underinsured coverage in connection with an umbrella policy *if* the insured has purchased a primary automobile liability policy.

473

coverage as required by statute. The next question, therefore, is what the remedy should be.

¶ 19.  American Family failed to comply with the requirements of WIS. STAT. § 632.32(4m). Notice was required at the time the umbrella policy was delivered. Had that occurred, the Rebernicks could have decided whether to purchase underinsured motorist coverage, and in what amount. Had they elected to purchase the coverage, they would have paid American Family the price of the policy. American Family would have been compensated for the risk it assumed and the Rebernicks would have had the coverage they desired. Returning both parties to the place they would have been, but for American Family's violation of the statute, seems to me to be the only equitable remedy.

¶ 20.  The Majority asserts there must have been a mutual mistake in order to provide a remedy. Majority, ¶ 12. If that analysis is correct, in my view, American Family's mistake was an incorrect analysis of its obligations under the law. The Rebernicks' "mistake" in failing to purchase coverage was occasioned by American Family's actions. Because American Family provided no notices, there is no evidence in the record that the Rebernicks had the knowledge or the opportunity to decide whether to add this coverage to their umbrella policy, contrary to the Majority, ¶¶ 12–13.