716 N.W.2d 176 (2006)
2006 WI App 99
In the Interest of Ruby WASHINGTON.
City of Milwaukee, Petitioner-Respondent,
v.
Ruby Washington, Respondent-Appellant.[]
No. 2005AP3141.
Court of Appeals of Wisconsin.
Submitted on Briefs March 7, 2006.
Opinion Filed March 28, 2006.
*177 On behalf of the respondent-appellant, the cause was submitted on the brief of William J. Tyroler, Assistant State Public Defender, Milwaukee.
On behalf of the petitioner-respondent, the cause was submitted on the brief of Grant F. Langley, City Attorney, and Stuart S. Mukamal, Assistant City Attorney.
Before WEDEMEYER, P.J., FINE and KESSLER, JJ.
¶ 1 FINE, J.
Ruby Washington appeals from the trial court's order directing that she be confined under WIS. STAT. § 252.07(9) for tuberculosis treatment. The only issue on appeal is where she should be confined. We affirm.[1]

I.
¶ 2 The facts in this case are not disputed. Washington has pulmonary tuberculosis, which if not treated properly is not only dangerous to the infected person but also is dangerous to others, who can inhale the bacteria expelled by an infected person. And it does not take much to get tuberculosis bacteria into the air from which others can be infected. The City of Milwaukee tuberculosis program manager testified at a hearing before the trial court that tuberculosis can get into the air by an infected person "[c]oughing, laughing, singing, talking, sneezing." Although a person suffering from pulmonary tuberculosis who is on appropriate drug-therapy may be non-communicable, that person can become communicable unless he or she completes the course of treatment. WISCONSIN STAT. § 252.07 sets out procedures designed to protect both the public and those afflicted with the disease.
*178 ¶ 3 Washington did not cooperate with attempts to help her overcome her pulmonary tuberculosis and to keep her from infecting others. She was living in a homeless shelter on June 17, 2005, when she was first diagnosed as having the disease. As recounted in an affidavit executed by a tuberculosis-control-clinic public-health nurse, Washington was started on medication for her tuberculosis on June 21, 2005, and was given bus tickets so she could go to the tuberculosis clinic and take her medication "under direct observation" of the clinic staff. This did not work, however, because Washington missed two appointments and "disappeared from public view."
¶ 4 On August 22, 2005, Washington was found at the Aurora Sinai Medical Center, where she had gone to give birth. When she threatened to leave the hospital despite her tuberculosis, she was kept at the hospital in inpatient confinement against her will until, several days later, she and the City of Milwaukee stipulated that she would stay at the medical center for at least one month or until she was no longer contagious, and that after her release she would continue a course of supervised treatment for some nine months to ensure that she was cured.
¶ 5 On September 27, 2005, the trial court issued an order permitting Washington's release from the hospital, "but only on the condition that she strictly comply" with City orders that she fulfill and complete her course of treatment, and that this compliance be assured by having public-health staff see Washington take her prescribed medications. The order also required that Washington live with her sister, at whose home Washington "shall continuously reside and remain available for contact at that address until such time as in the judgment of the City of Milwaukee Health Department, her treatment is complete and she is cured of the disease of tuberculosis." Further, the order recited that if Washington "fails to fully and completely comply with the provisions of this Order, she may be subject to imprisonment, to renewed isolation and inpatient confinement pursuant to WIS. STAT. §§ 252.07(8) and (9) and/or to such other and additional sanctions for contempt of court as this Court may determine."[2]
*179 ¶ 6 Washington was released from Aurora Sinai Medical Center on September 27, 2005, and, on that very day, left her sister's home. Further, she did not comply with the required treatment-regimen. On September 29, 2005, Washington was arrested for violating the trial court's order, and, after being assessed at Aurora Sinai Medical Center, was taken to the Milwaukee County Criminal Justice Facility. On October 1, 2005, she was released from the Facility because of an apparent bureaucratic mix-up. The City found Washington on October 5, 2005, and she was again taken into custody.
*180 ¶ 7 The trial court held a hearing on October 5, 2005, and, on that day, issued the order from which Washington appeals. The order directed that Washington "be confined in the Milwaukee County Criminal Justice Facility" unless otherwise ordered, and directed that Washington "shall fully comply" with her treatment regimen. Uncontradicted testimony at the October 5 hearing established that the required treatment and observation would take "nine cumulative months" from October 5. If that were not done, the City's tuberculosis program manager told the trial court that both the public and Washington would suffer serious consequences:
[Washington's] personal consequences could include death, could include severe illness. She would again become incapacitated at some point, probably very weak and debiled, not feel very well at all. The consequences for the public would be transmission of tuberculosis to people.
The order also set April 7, 2006, for trial-court review of Washington's condition and circumstances.
¶ 8 As noted, Washington does not dispute either that she has pulmonary tuberculosis or that she must complete her course of treatment to get fully well and not be a danger to others in the community. She contended before the trial court, however, and argues on appeal, that she should not be at the criminal-justice facility, but, rather, at the hospital or some other non-jail-type facility, even if that required that she be guarded twenty-four hours a day. The trial court rejected that contention:
There [has been] non-compliance and the risk of the community is way too high to allow her to just walk out the door today. Now, [addressing Washington's trial lawyer], I have  I do not know where else I can place your client but in the jail at this point for confinement.... [I]f you can find some other locked facility for your client that would agree to take her, the Court would be happy to order her placed somewhere else, and I'm sure the City would agree. The problem is that I need to have a locked facility where she's going to stay put.... With respect to the [suggestion] that I place a guard at the hospital and allow her to stay at the hospital for the remainder of her treatment[,] I refuse to require tax payers to pay [for] 24 hour around the clock guard at her door to make sure she stays put. I don't think that's appropriate. Miss Washington was given an opportunity to receive treatment in the community and she failed to do that.
We agree.

II.
¶ 9 This appeal comes to us in two interconnected postures. First, an appeal from the trial court's order, in which the trial court specifically did not invoke its contempt power. Second, by virtue of an order issued by this district's motions judge on January 9, 2006, that nevertheless characterized the trial court's order as "at base, an appeal from a contempt order." See WIS. CT.APP. IOP VI(3)(c) (authority of the motions judge). The practical effect of the January 9, 2006, order is that it makes inapplicable the declaration in WIS. STAT. § 252.07(9)(e) that appeals from trial-court orders issued under § 252.07(9) "shall be heard within 30 days after the appeal is filed." Although appeals from contempt orders are one-judge appeals under WIS. STAT. § 752.31(2)(h), this appeal was immediately transformed into a three-judge appeal by this court's chief judge. See § 752.31(3). The January 9 order also directed that this appeal be expedited, which it has been. Irrespective of whether this appeal is seen as one from *181 an order founded on § 252.07(9), or one based on the trial court's power to enter orders of contempt under WIS. STAT. ch. 785, the result is the same-the trial court's order is lawful.
¶ 10 This appeal presents only issues of law: the proper interpretation of statutes to facts that are uncontested. Thus, our review is de novo. See Rebernick v. Wausau Gen. Ins. Co., 2005 WI App 15, ¶ 5, 278 Wis.2d 461, 466, 692 N.W.2d 348, 351, aff'd, 2006 WI 27, 289 Wis.2d 324, 711 N.W.2d 621. We look at WIS. STAT. § 252.07(9) and WIS. STAT. ch. 785 in turn.

A. WISCONSIN STAT. § 252.07(9).

¶ 11 WISCONSIN STAT. § 252.07(9)(a)1-3 is set out in full in footnote 2, and, when read together, empowers the trial court to order confined a person who either has "infectious tuberculosis" or "has noninfectious tuberculosis but is at high risk of developing infectious tuberculosis," and who "has failed to comply with the prescribed treatment regimen," if "all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists." Washington argues that under § 252.07(9)(a)3, she must be placed at a facility that is the least restrictive of her freedom. We disagree.
¶ 12 We apply statutes as they are written. State ex rel. Kalal v. Circuit Court, 2004 WI 58, ¶ 44, 271 Wis.2d 633, 662, 681 N.W.2d 110, 123-124. As we have seen, WIS. STAT. § 252.07(9)(a)3 reads, as material: "That all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists." This subsection has two parts. Confinement may not be ordered unless:
(1) attempts at "voluntary compliance with treatment have been exhausted," and
(2) there is "no less restrictive alternative" to confinement.
As the City cogently points out, the section does not reference the nature of the place of confinement. Certainly, if the legislature intended to engraft a "least restrictive facility" dictate, it could have easily done so in § 252.07(9)(a)3 as it has elsewhere. See WIS. STAT. § 51.20(9)(b) ("Such recommendation shall include the level of inpatient facility which provides the least restrictive environment consistent with the needs of the individual.") (emphasis added); WIS. STAT. § 51.30(4)(b)5 ("to determine whether the person should be transferred to a less restrictive or more appropriate treatment modality or facility") (emphasis added); WIS. STAT. § 51.35(1)(d)1 ("[T]he department may ... transfer any patient from a state treatment facility or other inpatient facility to an approved treatment facility which is less restrictive of the patient's personal freedom.") (emphasis added); WIS. STAT. § 55.06(9)(a) ("Placement by the appropriate board or designated agency is subject to s. 46.279 and shall be made in the least restrictive environment consistent with the needs of the person to be placed and with the placement resources of the appropriate board specified under s. 55.02.") (emphasis added); WIS. STAT. § 938.33(a) ("[T]he report shall indicate that a less restrictive alternative than placement in a secured correctional facility, a secured child caring institution or a secured group home is not appropriate.") (emphasis added); WIS. STAT. § 938.355(1) ("[T]hat determination shall be prima facie evidence that a less restrictive alternative than placement in a secured correctional facility, a secured child caring institution, or a secured group home is not appropriate.") (emphasis added); WIS. STAT. § 938.357(4)(c)1 ("If a juvenile is placed in a Type 2 secured correctional facility ... *182 and it appears that a less restrictive placement would be appropriate for the juvenile, the department, after consulting with the child welfare agency ... may place the juvenile in a less restrictive placement.") (emphasis added). Indeed, as Washington points out, the California legislature has decreed that persons like her may not be held "in correctional facilities." CAL. HEALTH & SAFETY CODE § 121358(a) ("Notwithstanding any other provision of law, individuals housed or detained through the tuberculosis control, housing, and detention program shall not reside in correctional facilities, and the funds available under that program with regard to those individuals shall not be disbursed to, or used by, correctional facilities. This section shall not be interpreted to prohibit the institutionalization of criminals with tuberculosis in correctional facilities."). Wisconsin, however, has not followed that course, and the proper respect we owe the legislature prevents us from doing so by judicial "legislation."
¶ 13 Further, Washington does not present any authority other than a one-sentence reference to a 1995 law review article to support her passing assertion that she has constitutional entitlement to hospital versus correctional-facility confinement.[3] We will not address arguments that are not developed or briefed adequately. See Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't, 128 Wis.2d 246, 255 n. 5, 381 N.W.2d 593, 598 n. 5 (Ct.App.1985). Nevertheless, this country has long recognized that the Constitution does not bar enforced quarantine. See Compagnie Francaise de Navigation a Vapeur v. Louisiana Bd. of Health, 186 U.S. 380, 387, 22 S.Ct. 811, 46 L.Ed. 1209 (1902).
¶ 14 As the trial court recognized, government spending is a zero-sum endeavormoney spent on giving Washington the type of confinement she prefers would, per force, have to be diverted from other more worthwhile societal endeavors, such as both helping persons who want but cannot afford medical treatment, and who will cooperate with that treatment. And, as the trial court pointed out, taxpayer-funded cisterns, from which all government expenditures flow, are not bottomless; taxpayers, too, are entitled to consideration so they can use more of their hard-earned money as they see fit. Moreover, although Washington cites D.E.R. v. La Crosse County, 155 Wis.2d 240, 248, 455 N.W.2d 239, 243 (1990), for the proposition that under WIS. STAT. § 55.06(9)(a) (1987-88) taxpayer cost was an impermissible consideration, the provision now unambiguously provides that taxpayer cost is a consideration: "Placement by the appropriate board or designated agency is subject to § 46.279 and shall be made in the least restrictive environment consistent with the needs of the person to be placed and with the placement resources of the appropriate board specified under § 55.02." § 55.06(9)(a) (2003-04) (emphasis added). The change reflects legislative concerns similar to those expressed by the trial court and with which we agree.
¶ 15 As the trial court pointed out, Washington's jail-type confinement was necessitated by what she did. Moreover, taking to the next logical step her contention that she prefers being under a guard-enforced confinement in a hospital rather *183 that in the Criminal Justice Facility, being under guard at the Pfister Hotel or some other luxury facility would be "less restrictive" than either a hospital or the justice facility. She is not entitled to choose the place of her confinement.

B. WISCONSIN STAT. § 785.04.

¶ 16 Although the trial court specifically struck all references to contempt in the proposed order before it signed the order, we also address Washington's contention that confining her for more than six months is prohibited by WIS. STAT. § 785.04(1)(b).
¶ 17 Both parties and we agree that if the trial court's October 5, 2005, order was an order finding Washington in contempt, it was an order of remedial contempt, and that the applicable sanctions are limited by WIS. STAT. § 785.04(1), which provides:
REMEDIAL SANCTION. A court may impose one or more of the following remedial sanctions:
(a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.
(b) Imprisonment if the contempt of court is of a type included in § 785.01(1)(b), (bm), (c) or (d). The imprisonment may extend only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period.[4]
(c) A forfeiture not to exceed $2,000 for each day the contempt of court continues.
(d) An order designed to ensure compliance with a prior order of the court.
(e) A sanction other than the sanctions specified in pars. (a) to (d) if it expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court.
(Footnote added.)
¶ 18 As we have seen, the trial court's October 5, 2005, order directed that Washington "be confined" in the justice facility "until further order of this Court," and that although the trial court set review for April 7, 2006, everyone envisions that Washington's enforced treatment regimen will last some nine months. As we have also seen, Washington argues that this is three months longer than the maximum period permitted by WIS. STAT. § 785.04(1)(b). Although a trial court's contempt powers are circumscribed by WIS. STAT. CH. 785, Evans v. Luebke, 2003 WI App 207, ¶ 17, 267 Wis.2d 596, 611, 671 N.W.2d 304, 313, its remedial powers powers necessary to compel compliance with lawfully issued ordersare not as limited as Washington contends.
¶ 19 First, under WIS. STAT. § 785.04(1)(d) the trial court was empowered to fashion an order to "ensure compliance with a prior order," and the legislature properly left the scope of such an ensure-compliance order to the trial court's discretion, without micro-managing legislative directive. Second, and perhaps even more important, the expansive scope of the trial court's power to fashion an appropriate remedy is specifically recognized by § 785.04(1)(e), which, in haec verba, authorizes the trial court to customize a remedial order that does not fall within subsections "(a) to (d)." Here, the trial court fully explained why confinement for more than six months was necessary to ensure Washington's compliance with her *184 treatment regimen; namely, that the six-month limitation would "be ineffectual to terminate" Washington's continuing failure to comply with its September 27, 2005, order, which directed, upon the parties' stipulation, Washington to voluntarily complete her course of treatment. And, contrary to Washington's contention that she cannot "purge" her contempt by using keys to freedom in her possession, all she need do is comply with the required course of treatment. See State ex rel. N.A. v. G.S., 156 Wis.2d 338, 342, 456 N.W.2d 867, 869 (Ct.App.1990) ("sanction must be purgeable through compliance"). She "purges" her contempt by complying with the treatment regimen for the medically required time. After that purge, she will no longer be confined. If, as she posits without support in the Record, she can never be assured of a cure, the remedy is not, of course, permitting her to roam our community with the real danger that she would make others very sick. In any event, that supposition is far from being ripe for either argument or decision. See U.S. Bank Nat'l Ass'n v. City of Milwaukee, 2003 WI App 220, ¶ 17, 267 Wis.2d 718, 737, 672 N.W.2d 492, 500 ("`Grotesque or fanciful situations, such as those supposed, will have to be dealt with when they arise.'") (quoting Gaines v. City of New York, 215 N.Y. 533, 109 N.E. 594, 596 (1915) (Cardozo, J.)).

III.
¶ 20 In sum, the trial court's order of October 5, 2005, was lawful, whether considered under WIS. STAT. § 252.07(9) or under WIS. STAT. § 785.04(1). Accordingly, we affirm.
Order affirmed.
¶ 21 KESSLER, J. (concurring in part, dissenting in part).
Because I agree with the Majority's conclusion that under the circumstances of this case Washington was properly confined, I concur in the result the Majority reaches in Part II.A. of its opinion. I write separately to clarify what I understand is permitted by WIS. STAT. §§ 252.07(8) and (9) in the context of depriving a person of her liberty. I dissent from Part II.B. of the Majority opinion because I do not agree that this case involved a finding of contempt under WIS. STAT. ch. 785, and I therefore believe that we should not be addressing that issue. I also disagree with the Majority's conclusion that the contempt statutes provide a basis for jailing a person confined for treatment under the authority of § 252.07(9).

I. Public health confinement
¶ 22 WISCONSIN STAT. §§ 252.07(8) and (9) set out the scheme that gives public health departments the authority to compel persons with contagious tuberculosis to accept treatment for the disease. If the infected person refuses to comply with treatment, the person may be confined and treatment compelled until the person is cured. Confinement may be enforced under the terms of § 252.07(9)(a) when the health department establishes all of the following: (1) the person has infectious tuberculosis; (2) the person has failed to follow the treatment regimen; (3) other means of compelling treatment have been exhausted and no less restrictive alternative exists; and (4) the infected person poses an imminent and substantial threat to herself or the health of the general public. Id. I agree with the Majority that "no less restrictive alternative" in § 252.07(9)(a)3. refers to the method of providing treatment, not to the location of the confinement. See Majority op., ¶ 12.
¶ 23 WISCONSIN STAT. § 252.07(5) authorizes home isolation to provide treatment *185 for the infected person and to reduce the public's exposure to the disease. That alternative was initially ordered here, but Washington refused to comply. The existence of the elements required by WIS. STAT. § 252.07(9)(a) to permit confinement to effect treatment were not disputed. The question before the court was only where the confinement for treatment would occur. The Majority's emphasis on the legislature's failure to describe the place of confinement by a "least restrictive" standard might be incorrectly understood to imply that a correctional facility is always an acceptable alternative. See Majority op., ¶¶ 12-13. I write to clarify why I believe such a reading would be an incorrect interpretation of the statutes and of the Majority opinion.
¶ 24 When a trial court finds under WIS. STAT. § 252.07(9)(c) that confinement is the least restrictive method necessary to ensure treatment, it has both the discretion to consider alternative places of confinement and the obligation every six months to review the continuing necessity of confinement. Here, the trial court was presented with only two confinement location alternatives: a twenty-four hour guard for Washington in a hospital room, or medication delivered to Washington in a jail cell. The trial court appropriately considered all of the options presented. It also stated that it was open to other suggestions. No other suggestions appear in the record. With only two alternatives, and no detailed cost analysis, it was not unreasonable for the court to conclude that jail was a more cost-effective location to confine Washington for treatment.

II. Contempt confinement
¶ 25 Having concluded that the trial court had the authority to confine Washington for treatment under WIS. STAT. § 252.07(9), the Majority proceeds to decide the case on the alternative basis of statutory contempt of court under WIS. STAT. ch. 785. I disagree with the decision to address this issue, because, as this court recognized in State v. Blalock, 150 Wis.2d 688, 703, 442 N.W.2d 514 (Ct.App.1989), cases should be decided on the "narrowest possible ground." In addition, I disagree with the Majority's conclusion because it adds to the statutory tuberculosis treatment program a remedy that is not only unnecessary on the facts of this case, but is also an alternative that the legislature could have easily included in treatment program but did not.
¶ 26 The trial court made clear that it was not conducting a contempt proceeding. As the Majority observes, the trial court struck all references to contempt before signing the order on which this appeal is based. See Majority Op., ¶ 16. Because the order appealed from was not based on a finding of contempt, we should not decide whether the trial court could have ordered Washington confined on that basis.
¶ 27 The fact that in a preliminary order this court erroneously described this case as "at base, an appeal from a contempt order," see Majority Op., ¶ 9, does not mean that we should address a legal issue on appeal that was never a part of the order appealed from. The order appealed from is no more nor less than an order pursuant to WIS. STAT. § 252.07(9) confining a person infected with contagious tuberculosis to a facility for treatment. The power of the court to enter that order is the only issue we should address.
¶ 28 Furthermore, I disagree with the Majority's conclusion in Part II.B., see ¶¶ 16-19, that WIS. STAT. §§ 785.03 and 785.04, governing imprisonment for contempt, are available as an alternate basis for confining a person for treatment of tuberculosis. The Majority discusses the *186 definitions of sanctions under § 785.04. It does not discuss the alternative procedures in § 785.03 that are required to impose those sanctions. In view of the significant powers provided to the trial court in WIS. STAT. § 252.07, a close review of the process set out by the legislature by which a trial court may impose contempt sanctions compels the conclusion that contempt is not an appropriate alternative vehicle to order the tuberculosis treatment because the civil liberties safeguards connected with compelled treatment are not a part of contempt punishment.
¶ 29 The trial court could not have ordered imprisonment as a remedial sanction for contempt under WIS. STAT. § 785.03(1)(a) because Washington cannot rid herself of the contempt (i.e., not taking her medicine) by terminating the offending conduct (i.e., taking her medicine) and thus gain release from imprisonment. If the Majority were correct in applying WIS. STAT. ch. 785 to this case, Washington would have to be released from the correctional facility as soon as she began taking her medicine. WISCONSIN STAT. § 785.04(1)(b) permits imprisonment for "only so long as the person is committing the contempt of court...." Obviously, that would be an absurd result when long-term tuberculosis treatment is needed. One suspects the inapplicability of contempt proceedings to tuberculosis treatment was not lost on the legislature when it crafted the more detailed and specific treatment enforcement program of WIS. STAT. § 252.07(9).
¶ 30 Other provisions in WIS. STAT. ch. 785 likewise fail to fit the situation here. This was not a punitive sanction contempt proceeding under WIS. STAT. § 785.03(1)(b) because it was neither referred to the district attorney for prosecution nor separately prosecuted. This was not a summary procedure under § 785.03(2) because it did not involve action committed in the presence of the trial court.
¶ 31 Had the legislature wished to provide contempt under WIS. STAT. § 785.04 as an alternative means of compelling tuberculosis treatment, it could easily have done so. It did not. WISCONSIN STAT. § 252.07(9) makes no reference to the contempt statutes. The legislature, instead, developed an elaborate and detailed system to protect the public from, provide treatment for, and protect the civil liberties of, individuals with contagious tuberculosis. The legislature has concluded that the statutory system of regulation, and enforcement, provides adequate tools to protect the public and to treat the infected. The key to release from confinement under § 252.07(9) is becoming tuberculosis-free. The key to release from imprisonment for contempt, however, is either to complete the specific time imposed as punishment or to end the conduct that resulted in the contempt finding. Neither method of contempt release is available to a person infected with tuberculosis. This court should not engraft an entire additional body of contempt law onto a carefully designed treatment system solely because of an improvident statement earlier made by this court before it had the opportunity to review the complete record.
¶ 32 Because the parameters of WIS. STAT. ch. 785 add nothing to the tuberculosis treatment sanctions provided by the legislature, and because ch. 785 was not incorporated by the legislature in WIS. STAT. §§ 252.07(8) and (9), I respectfully dissent from Part II.B. of the Majority opinion.
*482 
NOTES
[] Petition for Review granted June 14, 2006.
[1] The trial court's order was entered on October 5, 2005. Ruby Washington's notice of appeal was filed on December 21, 2005.
[2] WISCONSIN STAT. § 252.07(8), referenced by the trial court's order of September 27, 2005, provides:

(a) The department or a local health officer may order the confinement to a facility of an individual who has a confirmed diagnosis of infectious tuberculosis or suspect tuberculosis if all of the following conditions are met:
1. The department or local health officer notifies a court in writing of the confinement.
2. The department or local health officer provides to the court a written statement from a physician that the individual has infectious tuberculosis or suspect tuberculosis.
3. The department or local health officer provides to the court evidence that the individual has refused to follow a prescribed treatment regimen or, in the case of an individual with suspect tuberculosis, has refused to undergo a medical examination to confirm whether the individual has infectious tuberculosis.
4. In the case of an individual with a confirmed diagnosis of infectious tuberculosis, the department or local health officer determines that the individual poses an imminent and substantial threat to himself or herself or to the public health. The department or local health officer shall provide to the court a written statement of that determination.
(b) If the department or local health officer orders the confinement of an individual under this subsection, a law enforcement officer, or other person authorized by the local public health officer, shall transport the individual, if necessary, to a facility that the department or local health officer determines will meet the individual's need for medical evaluation, isolation and treatment.
(c) No individual may be confined under this subsection for more than 72 hours, excluding Saturdays, Sundays and legal holidays, without a court hearing under sub. (9) to determine whether the confinement should continue.
Section 252.07(9), referenced by the trial court's order of September 27, 2005, provides:
(a) The department or a local health officer may petition any court for a hearing to determine whether an individual with infectious or suspect tuberculosis should be confined for longer than 72 hours in a facility where proper care and treatment will be provided and spread of the disease will be prevented. The department or local health officer shall include in the petition documentation that demonstrates all of the following:
1. That the individual named in the petition has infectious tuberculosis; that the individual has noninfectious tuberculosis but is at high risk of developing infectious tuberculosis; or that the individual has suspect tuberculosis.
2. That the individual has failed to comply with the prescribed treatment regimen or with any rules promulgated by the department under sub. (11); or that the disease is resistant to the medication prescribed to the individual.
3. That all other reasonable means of achieving voluntary compliance with treatment have been exhausted and no less restrictive alternative exists; or that no other medication to treat the resistant disease is available.
4. That the individual poses an imminent and substantial threat to himself or herself or to the public health.
(b) The department or local health officer shall give the individual written notice of a hearing at least 48 hours before a scheduled hearing is to be held. Notice of the hearing shall include all of the following information:
1. The date, time and place of the hearing.
2. The grounds, and underlying facts, upon which confinement of the individual is being sought.
3. An explanation of the individual's rights specified under par. (d).
4. The proposed actions to be taken and the reasons for each action.
(c) If the court orders confinement of an individual under this subsection, the individual shall remain confined until the department or local health officer, with the concurrence of a treating physician, determines that treatment is complete or that the individual is no longer a substantial threat to himself or herself or to the public health. If the individual is to be confined for more than 6 months, the court shall review the confinement every 6 months.
(d) An individual who is the subject of a petition for a hearing under this subsection has the right to appear at the hearing, the right to present evidence and cross-examine witnesses and the right to be represented by adversary counsel. At the time of the filing of the petition the court shall assure that the individual who is the subject of the petition is represented by adversary counsel. If the individual claims or appears to be indigent, the court shall refer the individual to the authority for indigency determinations specified under s. 977.07(1). If the individual is a child, the court shall refer that child to the state public defender who shall appoint counsel for the child without a determination of indigency, as provided in s. 48.23(4). Unless good cause is shown, a hearing under this subsection may be conducted by telephone or live audiovisual means, if available.
(e) An order issued by the court under this subsection may be appealed as a matter of right. An appeal shall be heard within 30 days after the appeal is filed. An appeal does not stay the order.
[3] Washington explains: "Given the accelerated processing of this appeal, the constitutional grounding of Ms. Washington's argument will not be developed more fully." As we have seen, the trial court's order from which this appeal is taken was entered on October 5, 2005, and Washington's notice of appeal was filed on December 21, 2005. Her appellate brief was filed with this court on January 26, 2006.
[4] WISCONSIN STAT. § 785.01(1), as material to WIS. STAT. § 785.04(1)(b), provides: "`Contempt of court' means intentional: ... (b) Disobedience, resistance or obstruction of the authority, process or order of a court."