HUNTER, Appellant, vs. NEUVILLE and another, Respondents.

*September 14—October 11, 1949.*

424

426

For the appellant there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

For the respondents there was a brief by *J. A. DeBardeleben* of Phillips, attorney, and *Arthur DeBardeleben* of Park Falls of counsel, and oral argument by *J. A. DeBardeleben.*

MARTIN, J. The action was commenced by the plaintiff against many defendants to quiet title to most of the northwest quarter of the northeast quarter, section 11, township 39, north, of range 6 east, in Oneida county, Wisconsin. The only answering defendants were the defendants, Louis G. Neuville and Frances Neuville, his wife, who also counterclaimed (as amended) for damages for trespass and to quiet title and to establish title, respectively, to various parcels which we will discuss by the areas referred to on the maps herein.

(1) *ABC (Exhibit K) and MANOPXM or MANOPM (Exhibit 2), depending upon the proper construction of the calls of the description.*

The defendant, Frances Neuville, claims title to area ABC (May Hudson parcel referred to above) based upon the following conveyances:

(a) Tax deed from Oneida county and the state of Wisconsin to Frances Neuville, dated September 9, 1940, and recorded in the office of the register of deeds for Oneida county in Vol. 141 Deeds, p. 13, on the same day.

(b) Tax deed from Oneida county and the state of Wisconsin to Frances Neuville, dated September 9, 1940, and recorded in the office of the register of deeds for Oneida county in Vol. 141 Deeds, p. 14, on the same day.

Defendants' Exhibit K.

The descriptions contained in each of the two tax deeds referred to above are descriptions by reference to Vol. 2 Deeds, p. 555, which is a record of Vilas county, and was transcribed to Vol. 1 Deeds, p. 151, Oneida county. The execution, delivery, and recordation of the two tax deeds are undisputed. Both of the tax deeds were executed and recorded on September 9, 1940.

The defendant grantee named in the tax deeds has been in occupation and possession of said premises, consisting principally of timber or woody land, by means of having used the same for the supply of fuel, for forest-stand improvement and

the purposes of husbandry, and for the ordinary use of the occupant consisting of improvement and use as a playground,

Plaintiff's Exhibit 2.

since the fall of 1940. All taxes levied upon these premises have been paid by the defendant grantee since the issuance of the two tax deeds, which is five years, and more.

In 1930, 1931, 1932, and 1933, the parcel described in Vol. 2 Deeds, p. 555, Vilas county, transcribed to Vol. 1 Deeds, p. 151, Oneida county, was separately assessed.

John J. O'Leary, a real-estate broker who represented the Olsons in the sale to Jilson, testified that the Olsons did not claim to own area ABC, and O'Leary did not try to sell that tract. He advised Jilson that tract was not included.

These conveyances are no longer subject to challenge by reason of the provisions of secs. 75.27, 75.29, and 75.30, Stats. None of the exceptions to limits set forth in sec. 75.28 is applicable here.

If every conveyance under which the defendant, Frances Neuville, claims title to area ABC were to be vacated and set aside, the plaintiff still would not have title to that area. The plaintiff, through Warren Jilson, is the successor of the Olsons. The warranty deed from John Coyne and wife Catherine to C. H. Olson (June 16, 1919), under which the Olsons' interest in the northwest quarter of the northeast quarter originated, excepts in part therefrom "a piece or parcel thereof formerly sold to May Hudson." The parcel referred to in said conveyance as having been sold to May Hudson is area ABC or area MANOPXM or MANOPM. (The construction of this description will be discussed later.)

It clearly appears that plaintiff has no title to this area as he obtained by his deed from Jilson only those parts of the northwest quarter of the northeast quarter (NW¼ NE¼) not theretofore legally conveyed.

It was held in *Madler v. Kersten* (1920), 170 Wis. 424, 175 N. W. 779, that an action to remove a cloud on title to real estate can only be maintained by one who shows title in himself, either legal or equitable, or shows that he has a lien or incumbrance on the land.

Previous to the two tax deeds a quitclaim deed was conveyed from Oneida county to defendant, Frances Neuville, on May 10, 1940, and recorded the same date in the office of the register of deeds of Oneida county in Vol. 64 Deeds, p. 187. This is based on a tax deed taken by said county on April 12, 1935, and recorded on that date in Vol. 125 Deeds, p. 603, and the description in such tax deed purports to cover land described in Vol. 2 Deeds, p. 555, Oneida county records, which record in fact describes no real estate. The trial court held that such tax deed was ineffective and void and the quitclaim deed based thereon is void and of no effect, parol evidence not being admissible to vary the terms of said deed.

The descriptions contained in the quitclaim deed and the two tax deeds were not identical, as claimed by plaintiff, but the quitclaim deed purported to cover Vol. 2 Deeds, p. 555, Oneida county records, describing no real estate, whereas the tax deeds specified no county of recordation thereby creating a latent ambiguity open to aid by extrinsic evidence.

The description as contained in the two tax deeds reads: "Part of NW NE described in Vol. 2 of Deeds page 555 sec. 11-39-6." Each tax deed states that the lands are located in Oneida county, Wisconsin. The ambiguity in the description in the two tax deeds is that it is not stated to which county the term "Vol. 2 of Deeds page 555" refers. It is undisputed that Vol. 2 Deeds, p. 555, conveying part of "NW NE" sec. 11-39-6 east, refers to the records of Vilas county, and that the conveyance shown at said Vol. 2 Deeds, p. 555, Vilas county records, was transcribed to Oneida county records in Vol. 1 Deeds, p. 151, and that both of said records are included in the Oneida county tract index and are disclosed by an examination thereof.

The evidence clearly supports the finding of the trial court. See *Meade v. Gilfoyle* (1885), 64 Wis. 18, 24 N. W. 413; *Doherty v. Rice* (1942), 240 Wis. 389, 395, 3 N. W. (2d) 734.

Plaintiff contends that the tax deeds were void in the tax groundwork, as a double assessment. This contention is based upon the assessment to Olson of all of northwest quarter of the northeast quarter, 11-39-6, except parts. An examination of the record reveals that one of the excepted parts is that described in Vol. 2 Deeds, p. 555, Vilas county, transcribed to Vol. 1 Deeds, p. 151, Oneida county. It was area ABC that was excepted from the part assessed to Olson and separately assessed.

Plaintiff asserts that the tax deeds were void for indefiniteness of description. The references to Vol. 2 Deeds, p. 555, naming the "NW NE" sec. 11-39-6 east as being the description in which the parcel was contained could have meant nothing different than Vol. 2 Deeds, p. 555, Vilas county records, as the tract index and assessment rolls conclusively proved. The cases cited by plaintiff are distinguishable for they dealt with situations where there was insufficient information within the conveyance to distinguish the land granted from other lands, and where the extrinsic aids permitted by the cases, which we have cited above, are not available.

Plaintiff's next attack is that the defendants took the tax deeds without notice to Olson, as owner and occupant. We have already covered fully that Olson never owned or occupied area ABC. The cases cited by plaintiff are inapplicable because they involve actual owners or occupants, and the statute of limitations was not involved.

Sec. 75.36 (9), Stats., was enacted in its present form, as relied upon by plaintiff, by ch. 515, Laws of 1947. It applies only to transactions occurring after October 9, 1947 (sec. 75.36 (11) ), which is many years after the execution and delivery of the quitclaim deed from the county to defendant Frances Neuville, and the tax deeds involved here. The quitclaim deed and tax deed to the county upon which it was based were properly adjudged void by the trial court.

We have carefully considered all of plaintiff's propositions but for brevity in considering the remainder, we will state that construction, not reformation, of instruments is involved here, and there was no mortgage on tract ABC (MANOPXM or MANOPM, depending upon construction, to be discussed later) at the time that the tax deeds were taken. The defendant has title to this area.

(2) *Area E, east of highway (Exhibit K) or ABCDA, east of highway (Exhibit 2).*

The defendants claim title to this area through adverse possession for ten years under color of title. The written instrument under which the adverse possession under color of title is claimed covers the entire area, and the plaintiff concedes defendants' title to the part west of the highway.

On February 5, 1919, Barbara Zentner acquired title to area E. On January 24, 1920, she conveyed the portion thereof lying east of the highway to C. H. Olson in exchange for area F on Exhibit K which was at the same time conveyed to Barbara Zentner by C. H. Olson.

On October 19, 1922, Barbara Zentner Wesenberg, formerly Barbara Zentner, conveyed all of area E to Otto Wesenberg. On August 22, 1932, Otto Wesenberg conveyed all of area E to Robert Schmoldt and Hattie King, who, on March 28, 1940, conveyed all of said area E to defendants (recorded April 6, 1940, in Vol. 131 Deeds, p. 504).

Since obtaining the warranty deed on October 19, 1922, (all of area E), until some time in 1946, Otto Wesenberg occupied and resided upon the portion thereof west of the highway, either as grantee in his deed or under and by arrangement with subsequent grantees of his chain of title. The portion of area E, lying east of the highway, was a woody tract not suitable for agriculture, with no improvements or structures thereon. Wesenberg used this portion for the supply of fuel.

In dealing with adverse possession under color of title, the rule as stated in *Bettack v. Conachen* (1940), 235 Wis. 559, 564, 294 N. W. 57, is:

"Where a person enters under a deed of title, his possession is construed to be coextensive with his deed."

It is stated in *State v. Jewell* (1947), 250 Wis. 165, 171, 26 N. W. (2d) 825, 28 N. W. (2d) 314:

"Where one occupies a part of the premises conveyed his occupancy extends to the boundaries of the land described in the instrument under which he claims."

It was held in *Cobian v. Tiysic* (1923), 181 Wis. 65, 194 N. W. 24, that adverse possession under color of title be sustained as to an unfenced strip of timber and brushland about eight acres in area, being part of a forty-acre tract lying south of highway, on evidence that plaintiff and his predecessors cut timber eighteen years before and have cut firewood as needed, though not annually.

Under the provisions of sec. 330.06, Stats., where there is continual adverse occupation and possession for ten years of the premises described in the deed under which such claim is made "or of some part of such premises" such adverse possession is deemed coextensive with the description in such deed.

We have noted plaintiff's contentions but have carefully examined the evidence and hold that it established by the quantum of proof required that defendants have adverse possession of area E, east of the highway, under the provisions of sec. 330.07 (3), Stats.

(3) *Triangular parcel between area ABC and area D (Exhibit K) and between MANOPXM and the area marked as the site of the Neuville home (Exhibit 2).*

This parcel was conveyed by the owner, Catherine Coyne, to D. A. Kahn (recorded August 12, 1914), which was prior to the time that Catherine Coyne deeded certain property to

John Coyne (whence the plaintiff derives his title through Olson and Jilson) on March 29, 1918, recorded thereafter. D. A. Kahn never conveyed this parcel of land and is still the record owner thereof. We concur with the trial court that the plaintiff does not have title, nor is he in possession, nor was he in possession, nor did he have title at the commencement of the action, to these premises situated in Oneida county.

### (4) *Defendants' request for review.*

The description of area ABC on Exhibit K, as set forth in Vol. 2 Deeds, p. 555, Vilas county records, transcribed to Oneida county records in Vol. 1 Deeds, p. 151, reads as follows:

"Commencing at the southwest corner post of NW NE section 11-39-6 east, running north 27 rods, thence east 11 rods, thence northeast 6 rods, thence southeast 24 rods, thence west 44 rods to place of commencement, consisting of 6 acres more or less."

This same area is shown on Exhibit 2 as area MANOPXM or MANOPM, depending upon the proper construction of the calls of said description. This is the proposition involved in defendants' request for review.

Apparently there was a transposition of the figures (42 to 24) when the description above was written. The deed calls for going southeast 24 rods, thence west (not southwest) 44 rods to place of commencement. This acreage is approximately 4.9 acres which does not comply with the deed.

However, by going southeast 42 rods, thence west 44 rods to place of commencement, the description as to directions and acreage of the tract of land so inclosed conform to the directions and acreage stated in the description.

It is also undisputed that there was an old fence line running approximately along the line from Z to Y on Exhibit K.

We hold that the description should be corrected in accordance with the above so that it covers the entire area ABC (Exhibit K) and MANOPXM (Exhibit 2).

## (5) *Amendment of pleadings and costs.*

This action was brought on for trial, without a jury, on December 17, 1947. The defendants, Frances Neuville and Louis G. Neuville, as attorneys *pro se,* having appeared in the action and answered, on December 8, 1947, served upon the attorneys for the plaintiff their motion for summary judgment against the plaintiff, which said motion was returnable on December 17, 1947. On December 17, 1947, the defendants then first having legal representation, and appearing by their attorney, moved to withdraw their motion for summary judgment, which motion for withdrawal was opposed by plaintiff's counsel, and was granted by the court. At that same time, the plaintiff moved the court for summary judgment, which motion was denied.

The trial of the action was commenced on December 17, 1947, and because of the condition of the calendar was adjourned until December 30, 1947. Further testimony and other evidence were taken on December 30 and 31, 1947; and on December 31, 1947, at the conclusion of the evidence and testimony offered by the parties at that time, the defendants made an oral motion to amend their pleadings to conform to the proof. The court ordered that the motion be submitted in writing and that briefs relative thereto be submitted by both sides. Thereafter written motion was made incorporating the proposed amendments to said defendants' answer and counterclaim, and the matter was submitted on briefs from each side. The defendants' motion to amend the pleadings was granted by the order of the court, dated April 13, 1948, and by the terms of the order the plaintiff was given ten days to reply to the amended answer and counterclaim, and both sides were given an opportunity to offer such additional evidence as they might desire as a result of the allowance of the amendments.

Plaintiff replied to the amended answer and counterclaim on April 22, 1948, and additional evidence was received from both sides on May 20, 1948.

Counsel for the respective parties, at the suggestion of the court, submitted briefs on the testimony and other evidence received at the trial.

On September 18, 1948, and before rendering its opinion, the court, in the presence of the plaintiff and the defendant, Louis G. Neuville, made an inspection of the premises involved in the action. Thereafter the court rendered its opinion.

Thereafter defendants moved for specific findings, which motion was heard on October 22, 1948, at which time the plaintiff and the defendants each submitted proposed findings of facts. Defendants' proposed findings of fact were informally approved except as to certain portions. The court requested both sides to submit further briefs and the court, on January 5, 1949, rendered its opinion. Subsequently, findings of fact and conclusions of law were signed by the court and filed and judgment was entered, bill of costs was served, the plaintiff filed objections thereto, and the costs were taxed and allowed by the clerk as proposed by the said defendants, and on motion for review the court sustained the decision of the clerk except as to certain items which were disallowed by the order of the court, dated February 16, 1949.

A total of $297.09 was allowed by the trial court which consisted of $83.10, witness' fees; $34, abstract cost; $39.75, transcript of testimony; $23.83, telephone calls; $1.11, postage; $15.30, clerk fees; and $100, attorney fees. Plaintiff objects to all except the fees of the clerk.

The costs and disbursements allowed are in accordance with secs. 271.02 (2), 271.04 (2), and 325.05 (1) (b) and (c), Stats.

We have carefully reviewed the record relating to the amendment of the pleadings and as to costs. These matters were entirely within the discretion of the trial court, and there

is no evidence that its findings were unjust, bias, or prejudiced.

(6) *Application for allowance of costs of printing the pages of defendants' brief in excess of fifty pages.*

Pursuant to Rule 10 of this court, we are hereby allowing to defendants costs for printing pages of a brief in excess of fifty pages because of the omission of material facts and statutes in plaintiff's brief necessary to the decision of this case. These costs are imposed against said plaintiff.

*By the Court.*—Judgment affirmed except as to that part thereof involved in defendants' request for review which is hereby modified in accordance with this opinion. Additional costs to be awarded to defendants pursuant to Rule 10 of this court.