James CARNEY,
Plaintiff-Appellant,†

v.

CNH HEALTH & WELFARE PLAN, Fiatallis North America, Inc., f/k/a Fiat-Allis Construction Machinery, Inc., f/k/a Allis-Chalmers Corporation, CNH Global, NV, Inc. and Case New Holland, Inc., Defendants-Respondents.

Court of Appeals

*2006AP1529. Submitted on briefs April 3, 2007.*
*—Decided August 14, 2007.*

2007 WI App 205

(Also reported in 740 N.W.2d 625.)

† Petition to review denied 11/5/07.

446

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert Gingras* of *Gingras, Cates & Luebke, S.C.,* of Madison and *Jon D. Robinson* of *Bolen Robinson & Ellis, LLP* of Decatur, Illinois.

On behalf of the defendants-respondents, CNN Health & Welfare Plan, Fiatallis North America, Inc. and Case New Holland, Inc., the cause was submitted on the brief of *Robert K. Sholl, Christopher P. Banaszak*

and *Susan B. Woods* of *Reinhart Boerner Van Duren, S.C.* of Milwaukee and *Mark Casciari* of *Seyfarth Shaw LLP* of Chicago, Illinois.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. James Carney, an Allis-Chalmers retiree, appeals on behalf of himself and others similarly situated from a judgment dismissing with prejudice all claims seeking a finding of contempt and, alternatively, seeking damages for breach of contract against all defendants, and from the denial of his motion for a new trial based on newly discovered evidence. Carney contends that the trial court: (1) incorrectly construed previous orders entered in 1975 and 1979 in *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978); (2) incorrectly determined that a successor corporation to Allis-Chalmers was excused from complying with those orders based upon the finding that the successor's agents were ignorant of the orders; and (3) erroneously exercised its discretion when it denied a new trial based upon records produced after conclusion of this trial from the files of Fiatallis North America, Inc., which records had been transferred to Case New Holland in its merger with a successor-in-interest of Allis-Chalmers. We reverse in part and remand for further proceedings.

## BACKGROUND

¶ 2. This case is another chapter in the now more than twenty-five-year saga of Allis-Chalmers retirees' litigation to preserve their retirement life insurance benefits. The matter has twice been before our supreme court in *Schlosser v. Allis-Chalmers Corp.*, 65 Wis. 2d

153, 222 N.W.2d 156 (1974) (*Schlosser I*), and *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 271 N.W.2d 879 (1978) (*Schlosser II*), collectively referred to herein as "*Schlosser*" unless the context otherwise requires. This case involves interpretation of an order entered after remand of *Schlosser I* (when part of the class action was resolved by settlement and an order was issued approving and implementing that settlement) and of an order entered after remand of *Schlosser II*, pursuant to which the trial court also approved and implemented another stipulation (in which the non-settling class members from *Schlosser I* resolved their claims). The result of those two settlements, and the orders incorporating them, was to freeze the retiree cost for life insurance at a fixed cost to each retiree for each thousand dollars of insurance elected by the retiree, to refund the premiums in excess of those amounts which Allis-Chalmers had collected, and to pay the retiree class's attorney fees incurred in the *Schlosser* litigation.

¶ 3. Case New Holland, Inc. is the merged entity that includes the former Allis-Chalmers. CNH Health & Welfare Plan administers the retirement plans on behalf of Case New Holland, Inc., for which Allis-Chalmers was originally responsible.[2] CNH Health & Welfare Plan[3] notified retirees, some of whom are covered by the *Schlosser* orders, that the cost of optional life insurance would be increased. James Carney objected to the

[2] The exact sequence of intermediate corporate ownership between the sale of Allis-Chalmers Corp. and the ultimate ownership by Fiatallis is not critical to resolution of the corporate succession issue presented here, and is not further addressed.

[3] The corporate defendants are Fiatallis North America, Inc., described in the pleadings as "f/k/a Fiat-Allis Construction Machinery, Inc., f/k/a Allis-Chalmers Corporation, CNH Global, NV, Inc.," CNH Health & Welfare Plan, and Case New Holland, Inc.

increase, his concerns were not satisfied, and this litigation ensued. Carney, on behalf of the remaining members of the class of retirees involved in the *Schlosser* litigation, sued to enforce the orders which prohibit Allis-Chalmers from increasing the cost of life insurance for the class of retirees represented in *Schlosser*. Two orders from the *Schlosser* litigation are involved in the present case.

*The 1975 Order*

¶ 4. After remand by the supreme court in *Schlosser I*, the trial court, in an order in 1975, approved the settlement for all retirees who elected to accept the settlement proposal,[4] approved a communication attached to the order notifying the class members of their rights in the settlement, ordered Allis-Chalmers to increase the pension checks of those who accepted the settlement,[5] and advised that litigation would continue on behalf of the retirees who rejected the settlement and the deceased retirees to whom no settlement was offered. The settlement is described more specifically in the letter attached to the order and sent to the entire class over the judge's signature. The letter to each class member included a calculation of the increase that that recipient would receive under the settlement.[6] In addition to increasing most of the pensions for each retiree's life by one dollar per month for each year of credited

---

[4] The settlement was accepted by 2047 retirees of a class totaling 2371 members.

[5] The increase is caused by the refund of the charge for retiree life insurance received by Allis-Chalmers which was in excess of the amount fixed by the settlement agreement.

[6] "The amount of increase in basic pension benefit [sic] you personally would receive is $_____ per month for life. This

service, the settlement included the following specific promise by Allis-Chalmers: "The Company, by making this settlement offer, agrees, with respect to each litigant accepting, to (1) maintain the present life insurance program, and (2) not increase the cost of optional insurance above $1 per month per $1,000 of coverage."

¶ 5. The trial court in the present litigation observed that the 1975 Order approving the settlement, and adopting the letter by the court to class members explaining the settlement, did not specifically enjoin Allis-Chalmers.[7] The trial court therefore denied the motion for a finding of contempt, concluding that because the order contained no injunction language, it could only be enforced by breach of contract litigation. In addition, the trial court denied summary judgment on the breach of contract claim based upon the 1975 Order, holding that:

> I think that's a breach of contract action as to those subject to the 1975 settlement agreement. I don't think it goes to the level of contemptuous conduct because there was no direct order by the Court, it was an agreement between the parties.
>
> . . . .
>
> I am going to grant a partial summary judgment finding there is not a contemptuous act as to the 1975

increase applies to the basic pension only which you receive and is not available to the surviving spouse under the survivorship option."

[7] Judge Moroney came to this conclusion twice. The first time at a motion hearing on May 10, 2005, when no litigant had been able to locate an actual copy of the relevant order; the second time at a reconsideration hearing on July 13, 2005, when the order and other documents referred to herein had been located and presented to the court.

person subject to the settlement agreement. There is a question of fact as to whether or not as to those people there is a breach of contract[.] ... I cannot determine ... whether or not they were made whole based on the ... moneys that were apparently paid back shortly after the actual filing of this lawsuit.

....

I am ruling that attorney's fees are not available for merely a breach of the settlement contract[.] ... I don't think that that rises to the explicit nature of the Court order enjoining a particular action .... I think it rises only to the extent of a breach unless this Court finds that a breach occurs and orders specific performance of that settlement agreement ... then you would have an issue of contemptuous conduct .... But only as to subsequent acts.

¶ 6. At the initial hearing, no party had a copy of the 1975 Order, but only the settlement agreement. When his counsel was able to locate copies of the 1975 orders, Carney moved for reconsideration because the June 30, 1975 Order specifically approved and incorporated the settlement through the court's attached letter to the class members. At the hearing on the reconsideration motion in July 2005, counsel for Carney advised the court that they now had records of retiree benefit files from defendants and, at the time of the latest increase in insurance charges, those files contained copies of the *Schlosser* settlement papers. Counsel also pointed out that the letter to class members, signed by the trial judge and attached to the June 30, 1975 Order, explained the offer and asked the class members to indicate whether they accept or reject the offer. The letter states: "The Company, by making this settlement offer, agrees, with respect to each litigant accepting, to (1) maintain the present life insurance program,

and (2) not [to] increase the cost of optional insurance above $1 per month per $1,000 of coverage."

¶ 7. The trial court was not persuaded. In denying the motion to reconsider, the court did not change its previous legal conclusion that:

> [T]his letter doesn't help in any way. All this tells them is that . . . that's the agreement . . . and that they in turn on their side are going to do this and you in turn on your side do this . . . and that's how we'll go from now on.
>
> The issue [is] whether or not there is a specific injunctive relief. And there is none.

The trial court also dismissed the contract claims as to the retirees subject to the 1975 Order because the court found that CNH Health & Benefits Plan paid the class members after learning of the error from Carney. The court, addressing Carney, characterized this conduct by CNH as a "problem because you got duty, breach, cause and damage in the lawsuit. And there's no damage."

### The 1979 Order

¶ 8. In 1979, after remand of *Schlosser II*, in which the supreme court determined that benefits to the retirees could not be changed retroactively by the employer, *id.*, 86 Wis. 2d at 234, 247, the remaining class members settled their claims. The trial court in *Schlosser II* recited the settlement terms in the 1979 Order. In addition to requiring the return of the life insurance premiums collected, and reinstating life insurance coverage for those who dropped coverage after the higher premium was assessed, the 1979 Order required Allis-Chalmers to "provide the level of coverage for living class member retirees as under the pre-1973 program and *shall cease further premium*

453

*contribution collections resulting from the 1973 change"* except as to some retirees who had been paying forty-five cents per thousand dollars of coverage and who would continue to pay that amount. (Emphasis added.) The 1979 Order also contained a provision vacating the entire settlement if any class member appealed and provided that:

> Allis-Chalmers Corporation is hereby enjoined from hereafter adversely altering, cancelling, changing or modifying its group term life insurance program, as reinstated, with respect to the retiree class members referred to in Appendix A.

There is no "Appendix A" in the record before us, nor was that document before the trial court in this proceeding.

¶ 9. The trial court observed that the 1979 Order contained specific reference to "enjoining" Allis-Chalmers. Although having previously concluded that a successor corporation "takes subject to the existing court order,"[8] the court expressed the view that failure to follow the order would not be contemptuous if "it was purely an administrative . . . act."[9]

---

[8] The trial court specifically noted:

[T]hey were in violation in '79 and that was the subject matter of Judge Parins' order. That is enforceable by contempt proceedings as to failure to follow that order . . . . [A]s a matter of public policy . . . every time you have a court order for someone to do something, they could go and create another corporation and then start doing business and then avoid the Court's process. You can't do that.

. . . .

As to the '79 group . . . whoever takes subsequent takes subject to the existing court order . . . .

[9] "If it was purely an administrative thing, I don't think it's probably . . . a contemptuous act."

¶ 10. The court granted partial summary judgment, and specifically dismissed the complaint as to contempt and breach of contract based upon the 1975 Order because there were no damages.[10]

¶ 11. The Honorable John A. Franke received what remained of the case as a result of judicial rotation. After trial to the court, Judge Franke made the following findings as to the dispute involving the 1979 Order: Shortly after conclusion of *Schlosser*, responsibility for Allis-Chalmers retirees moved to a new entity which ultimately became Fiatallis. For most of the 1980's and 1990's, the responsibility for the benefits belonged to Fiatallis. In about 1999, Fiatallis merged with other companies and became Case New Holland. Following the merger, a transition team worked on plans to consolidate the administration of benefits from the various companies and to develop a computerized database for that purpose. On or about February 1, 2001, the transition team made the decision to raise the life insurance premiums for some of the retirees, including members of the *Schlosser* class; however, they made that decision "without knowledge of the *Schlosser* case or settlement documents or court orders," although CNH Health and Welfare Plan had "actual or effective custody and responsibility for the files that had existed for some time as [Fiatallis] files and the files relating to the *Schlosser* class . . . . [I]t is clear that those files were available and used, to some extent." The Fiatallis files, in the custody of CNH Health & Welfare Plan, contained documents from the

---

[10] Although Judge Moroney stated legal conclusions as to the contempt question with respect to the 1979 Order, the record indicates he did not dismiss that claim. Judge Franke, therefore, dealt with both the contempt request and the breach of contract claim as to the 1979 Order.

*Schlosser* case, including the initial letter from the court describing the 1975 settlement proposal. However, the transition team and legal counsel became aware of *Schlosser* after this lawsuit was filed, or in connection with the filing. This prompted a recognition by those responsible that, as to some retirees, raising the premiums was "in violation of the judgment and orders" in the *Schlosser* case and they "restored coverage or refunded premiums" to a number of retirees.

¶ 12. The trial court considered the contempt request as applied to the 1979 Order and concluded that "[P]laintiffs have completely failed to establish any contempt . . . . I find no basis for any contempt theory as to any class by either CNH or by [Fiatallis] before it." The court explained that "plaintiffs have confused bureaucratic mistakes with contempt of court. And ultimately what they've proven is that mistakes were made." The court then describes the legal analysis which led to its conclusion that the admitted violation of the 1979 Order was not contempt:

> [W]hile there may be some evidentiary presumption that a company knows what's in all of its records, that presumption can be overcome . . . . [I]t's clear that this company wasn't aware and didn't have the necessary knowledge of either a Court order or of the fact that their actions were contrary to Court order . . . . [C]ontempt power is . . . supposed to be used . . . only to the extent necessary to vindicate Court orders and punish people who violate Court orders . . . by . . . deliberate, conduct, which . . . does require that you know about the order and know that what you're doing violates the [order].
>
> . . . .
>
> [T]his was not some deliberate attempt to avoid responsibility. This was a struggle to make sense out of old

records and court orders . . . . [W]hatever mistakes oc-
curred do not constitute contempt.

¶ 13. The trial court concluded as to the breach of
contract claim that "[P]laintiffs . . . have failed to prove
the existence of a breach of contract with respect to . . .
any . . . party . . . . [P]laintiffs have failed to meet their
burden to prove the existence of a contract." "This was
a judgment. There's no evidence that . . . anyone had a
meeting of the minds or reached a contractual arrange-
ment on this." Based upon its findings, the trial court
dismissed Carney's complaint in its entirety. Carney
appeals.

## STANDARD OF REVIEW

¶ 14. Findings of fact by the trial court will not be
set aside unless clearly erroneous. WIS. STAT. § 805.17(2)
(2005–06).[11] A conclusion of law will be reviewed as
such even if the trial court labeled it as a finding of fact.
*Crowley v. Knapp*, 94 Wis. 2d 421, 429–30, 288 N.W.2d
815 (1980). We review a trial court's conclusions of law
*de novo. City of Muskego v. Godec*, 167 Wis. 2d 536, 545,
482 N.W.2d 79 (1992).

## DISCUSSION

*I. Contempt*

¶ 15. Use of a legal term of art is not necessary to
incorporate documents. *State v. Smaxwell*, 2000 WI App
112, ¶ 1, 235 Wis. 2d 230, 612 N.W.2d 756 (legal term of

---

[11] All references to the Wisconsin Statutes are to the
2005–06 version unless otherwise noted.

art, "incorporated by reference," is not required in criminal complaint to make attached documents part of the complaint). A stipulation specifically approved by a court may be incorporated in a subsequent order. *State v. Andrew J.K.*, 2006 WI App 126, ¶¶ 17–18, 293 Wis. 2d 739, 718 N.W.2d 229 (approved stipulation as to placement alternative to avoid detention is enforceable although no separate order directed compliance with terms of stipulation). Documents may be incorporated in an order or other legal document without being physically attached to the document. *Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 12, 516 N.W.2d 434 (Ct. App. 1994) (order granting new trial may incorporate oral decision that was separately transcribed and filed) (citation omitted); *see also Hunter v. Neuville*, 255 Wis. 423, 432 39 N.W.2d 468 (1949) (description in a deed is sufficient when it mentions records in register of deeds office, thus incorporating them in the description of the property). We conclude that the 1975 Order, by the attachment of the trial court's letter to the order, incorporates that letter as part of the order.

¶ 16. No lesser an authority than the United States Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949),[12] specifically rejected the argument that there must be a specific injunction against the particular action to apply contempt sanctions to an order. The Court observed: "It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law." *Id.* The trial court here applied an inaccurate view of the law.

---

[12] Cited with approval in *In re Kading*, 74 Wis. 2d 405, 409, 246 N.W.2d 903 (1976) (per curiam).

¶ 17. An order or judgment which requires specific conduct (either to do, or to refrain from, specific actions) can be enforced by contempt. Neither the statute (WIS. STAT. § 785.01(1) " 'Contempt of court' means intentional . . . disobedience . . . of the authority . . . or order of a court") nor case law requires that an order contain the specific term "enjoin" or "injunction"[13] to allow the court to use contempt powers to enforce its orders. *See Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 317–18, 332 N.W.2d 821 (Ct. App. 1983) (stipulation requiring certain action by city incorporated in judgment can be enforced by contempt); *State ex rel. V.J.H. v. C.A.B.*, 163 Wis. 2d 833, 844, 472 N.W.2d 839 (Ct. App. 1991) (order to remain current in child support can be enforced by contempt). Nor is the possibility of a separate civil action a bar to use of contempt to enforce a court order. *Evans v. Luebke*, 2003 WI App 207, ¶ 10, 267 Wis. 2d 596, 671 N.W.2d 304 (*guardian ad litem's* failure to obey order to deposit portion of settlement checks in restricted account is a proper subject of contempt sanctions rather than damages for negligence).

¶ 18. The 1975 Order requires Allis-Chalmers to: "(1) maintain the present life insurance program, and (2) not increase the cost of optional insurance above $1 per month per $1,000 of coverage." Whether one views this order as *requiring* future conduct (maintain the described life insurance program), or *prohibiting* future conduct (not increase the cost above the stated amount), the result is the same. The order

---

[13] BLACKS LAW DICTIONARY 800 (8th ed. 2004) defines "injunction" as "[a] court order commanding or preventing an action."

requires specific, ongoing conduct and may be enforced by the contempt powers of the court.

¶ 19. The Supreme Court long ago explained the requirements of civil contempt:

> The absence of wilfulness [sic] does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.* The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. *An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.*

*McComb*, 336 U.S. at 191 (citations and footnote omitted; emphasis added).

¶ 20. The underlying purpose of contempt is to uphold the authority and dignity of the court.

> The sole justification for the existence of the contempt power is to protect the authority and dignity of the court. It is not limited to instances of noncompliance with specific orders but has been used in many other situations in which judicial authority has been attacked or ignored, e.g., unauthorized practice of law, intimidation of witnesses, [and an] improper remark by attorney in court.

*In re Kading*, 74 Wis. 2d 405, 411, 246 N.W.2d 903 (1976) (per curiam) (citations omitted). Wisconsin defines contempt as "intentional . . . [d]isobedience" to an "order of a court." WIS. STAT. § 785.01(1)(b). The statute codifies common law civil and criminal contempt. *See,*

460

*e.g., State v. Ramsay,* 16 Wis. 2d 154, 165, 114 N.W.2d 118 (1962); Judicial Council Committee Note, 1979, Wis. Stat. ch. 785. See also Wis JI—Criminal 2031 for the elements of contempt of court when an action has been commenced for the nonsummary imposition of a punitive sanction under § 785.01 (there is nothing similar for nonsummary civil contempt).[14]

¶ 21. The trial court here found that documents referencing the *Schlosser* orders had been in Fiatallis files during all of the 1980's and 1990's, and that Fiatallis had administered the retirement benefits consistent with the *Schlosser* orders during that time. The trial court also found that Fiatallis had now merged into Case New Holland and all of the described records were in the possession of the "transition team" of CNH Health & Welfare Plan, which were acting as agents of the merged corporate entity. The actual custody of the files relating to the *Schlosser* class was with CNH Health & Welfare Plan. The decision to assess increased life insurance premiums against the retirees violated the *Schlosser* orders. Raising the premiums was an intentional act. The CNH Health & Welfare Plan employee responsible for the decision to increase premiums was unaware of the *Schlosser* orders when that decision was made. When the existence and significance of the *Schlosser* orders was brought to the employee's attention, the error was substantially corrected.

---

[14] Wisconsin JI—Criminal 2031 sets forth three elements which must be proven in order for a finding of criminal contempt: (1) there must be a court order to which the defendant is subject; (2) the defendant must have the ability to comply with the court order; and (3) the defendant intentionally disobeyed the court order.

¶ 22. We must decide with respect to the 1979 Order whether, as the trial court found, a specific corporate agent's lack of actual knowledge of an existing court order is a defense against contempt by the corporate entity for an intentional act in violation of that order. We conclude it is not. *See, e.g., State v. Chinavare*, 185 Wis. 2d 528, 535, 518 N.W.2d 772 (Ct. App. 1994) (holding that those with knowledge of a valid court order may not escape contempt by abetting others in violating the order, even if the others are not subject to the order).

¶ 23. To allow a successor corporation to defend contempt based upon its agent's ignorance of court orders in the possession of the successor corporation and binding on both the predecessor corporation and successor corporations would make a mockery of court orders. *See* 9A WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4589 at 265 (perm. ed., rev. vol. 2002) ("knowledge of what appears on corporate books accessible to the person imputed with knowledge may be presumed"). Understandable sympathy for an individual agent of a corporation, when the agent acts in good faith, but without knowledge of what is in the files the agent is charged to administer, would permit easy corporate avoidance of responsibility by simply hiring a new employee with no actual knowledge of the order. We do not understand the legislature or prior court decisions to have created such a facile path by which a corporate entity can avoid its responsibility to comply with court orders.

¶ 24. If a court finds contempt under WIS. STAT. § 785.01(1)(b) has occurred, then the court must consider WIS. STAT. § 785.04(1), which provides for remedial

sanctions. The sanctions may include "money suffi-
cient to compensate a party for a loss . . . as [a] result
of a contempt" or "[a]n order designed to ensure
compliance." Sec. 785.04(1)(a) and (d). If a party has
promptly rectified all or part of a loss that occurred
because of violating the order, the trial court should
weigh that in exercising its discretion as to whether a
sanction is required. *See* § 785.04(1)(d); *City of Mil-
waukee v. Washington*, 2006 WI App 99, ¶ 19, 292
Wis. 2d 258, 716 N.W.2d 176 (trial court authority to
impose a sanction implies evaluating all factors
present), *aff'd in part, rev'd in part on other grounds*,
2007 WI 104, 304 Wis. 2d 98, 735 N.W.2d 111; *Johnson
v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 286, 470
N.W.2d 859 (1991) (The supreme court held, in the
context of a dismissal under WIS. STAT. §§ 802.10(3)(d),
805.03, and 804.12(2)(a)3., that a trial court should
"tailor its choice of sanction to the severity of the
party's misconduct."). The statute permits, but does
not require, imposition of sanctions. *Forest County v.
Goode*, 219 Wis. 2d 654, 663, 579 N.W.2d 715 (1998)
(We have "characterized 'may' as permissive and 'shall'
as mandatory unless a different construction is re-
quired by the statute to carry out the clear intent of
the legislature.") (citation omitted). Likewise, whether
compliance was forced by additional court order, or
whether it occurred voluntarily after the offender was
advised of the error, are also relevant factors to
consider in the context of a request for sanctions. *See
Washington*, 292 Wis. 2d 258, ¶ 19.

¶ 25. We conclude that the trial court misapplied
the law as to the 1975 Order when it held that
contempt was not available because the order to be
enforced did not contain an injunction, and as to the

1979 Order when it concluded that an agent's lack of knowledge of the existence of an order was a defense to finding the corporation in contempt. Consequently, the trial court has not properly considered the elements that must be shown to establish contempt under WIS. STAT. § 785.01(1)(b), as to either the 1975 Order or the 1979 Order.

¶ 26. Further, if the trial court finds that contempt occurred, it has not considered whether sanctions under WIS. STAT. § 785.04(1) are appropriate, because it considered conduct relevant to sanctions as a defense against the contempt assertion. Accordingly, we remand for a hearing on whether CNH Health & Welfare Plan was in contempt under WIS. STAT. § 785.01(1)(b) when it violated the 1975 and 1979 Orders which, as we have explained, incorporated the trial court's attached letter and, if so, whether sanctions under § 785.04(1) should be imposed.

*II. Contract*

¶ 27. The parties to the *Schlosser* litigation entered into stipulations resolving their disputes. As we have explained, those stipulations, by incorporation, became part of the court's orders. Each order required that Allis-Chalmers (and thereby its successor corporations) perform specific continuing conduct as to the two groups of class members. Failure to perform that conduct is at its essence a failure to abide by a valid court order of which the corporate entity had notice. Resolution of the *Schlosser* litigation resulted in orders that are enforceable by contempt. The *Schlosser* class members are not required to rely on contract litigation to vindicate

their rights under valid court orders.[15] *See, e.g., Evans*, 267 Wis. 2d 596, ¶ 10; *Town of Seymour*, 112 Wis. 2d at 317–18.

*III. New Trial*

¶ 28. Carney appeals the trial court's denial of his motion for a new trial based upon newly discovered evidence. The trial court, in the exercise of its discretion, determined that the newly discovered evidence did not shed new light on the breach of contract dispute. We will ordinarily sustain a trial court's discretionary act. *State v. Gudenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995) ("An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."). Here, the trial court carefully analyzed the impact of the new evidence on the breach of contract dispute and explained why it would not have affected the trial court's decision on the merits of the breach of contract claim. We see no error in the trial court's analysis. However, we express no opinion on whether the same evidence may be relevant and admissible on the contempt requests and possible sanctions as to which we remand for a new hearing.

---

[15] Pursuit of a contract remedy in this case demonstrates the practical difficulty, if not impossibility, of finding and analyzing records which are in the possession of successor corporate entities and which relate to a class that a quarter of a century ago was composed of more than two thousand people who had retired from a company that in the interim has been sequentially sold, re-sold and merged into various corporate entities.

*By the Court.*—Judgment affirmed in part; reversed in part; and cause remanded with directions.