**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 3, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1169**

**STATE OF WISCONSIN**

Cir. Ct. No. **2021CV6236**

**IN COURT OF APPEALS**
**DISTRICT I**

---

DONALD SIMS,

PLAINTIFF-APPELLANT,

V.

JERUSALEM MISSIONARY BAPTIST CHURCH, INC., ANTOINETTE REDD AND VIRGIL STEPHENS,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN, Judge. *Affirmed*.

¶1 WHITE, C.J.[1] Donald Sims appeals from the order holding him in contempt of court and imposing remedial sanctions. The circuit court did so after

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

it found that Sims had violated an earlier court order which had dismissed his amended complaint and made additional substantive holdings. Sims argues that the circuit court did not have the necessary subject matter jurisdiction to conduct further proceedings after this court affirmed the dismissal of his case and remitted it back to the circuit court without instructions. Sims also argues that the order that the circuit court found he violated did not impose any affirmative duties on his part, and that the circuit court therefore erroneously exercised its discretion when it found him in contempt and imposed remedial sanctions.

¶2 For the following reasons, we affirm.

## BACKGROUND

¶3 On June 28, 1967, Jerusalem Missionary Baptist Church (the "Church") registered as a non-profit corporation with the State of Wisconsin. The incorporator was Donnie Sims, the father of Plaintiff-Appellant Donald Sims. The original bylaws of the Church were also filed on that same day. In 2016, the Board of Directors of the Church adopted new bylaws, which provided in part that "[t]he Pastor is the chief executive officer of the Church and shall have the general oversight and supervision of the business and spiritual affairs of the Church and its ministries."

¶4 In 2019, Donnie Sims proposed that this particular part of the bylaws be amended to provide that, after his retirement or death, the Successor Pastor of the Church would have the general oversight and supervision of the *spiritual* affairs of the Church, while the Board of Directors would have general oversight and supervision of the *business* affairs of the Church. These new bylaws were drafted with the help of an attorney and adopted by the Board. Donnie Sims

passed away in August 2020 and Donald Sims was subsequently installed as the Successor Pastor of the Church on November 15, 2020.

¶5     Donald Sims filed a declaratory judgment action against the Church and two fellow members of the Board of Directors, Antoinette Redd and Virgil Stephens (collectively, "Defendants"), in October 2021.  The complaint alleged that the 2019 bylaws of the Church were "not valid or legally binding" on the Church, and that the 2016 bylaws "control[led] the actions of the members and board of directors of the Church."  The complaint alleged several causes of action and sought both declaratory relief and compensatory damages.  An amended complaint was filed in March 2022.

¶6     In lieu of an answer, Defendants filed a motion to dismiss pursuant to WIS. STAT. § 802.06(2)(a)6.  In a written order issued August 30, 2022, the circuit court[2] granted the motion, stating that: (1) the motion to dismiss would be granted in its entirety; (2) the 2019 Church bylaws were the governing bylaws of the Church; (3) all conduct engaged in by Donald Sims relating to the general oversight and supervision of the business affairs of the Church since he was named Successor Pastor was null and void; (4) the Board of Directors consisted of Donald Sims, Antoinette Redd, Virgil Stephens, and Della Clipps, who were the directors just prior to Donald Sims being named Successor Pastor; and (5) the

---

[2] Several judges in the Milwaukee County Circuit Court heard parts of this matter.  The Honorable Carl Ashley granted the motion to dismiss.  The Honorable Frederick C. Rosa heard the motion for sanctions while the appeal was pending.  The Honorable Michael J. Hanrahan held an evidentiary hearing and entered orders, including the final order now on appeal, after the case was remitted to the circuit court after the appeal.  We refer to any of the judges as the circuit court.

amended complaint and the entire case was dismissed with prejudice and without costs to any party.

¶7      Donald Sims filed a notice of appeal on September 20, 2022 and on October 4, 2022, the circuit court record was transmitted to this court. Sims filed a motion to stay the circuit court order pending appeal, which was denied on December 7, 2022.

¶8      While the decision on the appeal was pending, Sims continued to manage the business affairs of the Church and refused to provide the Board with the Church's business records. Defendants therefore filed a motion to find Sims in contempt, alleging that Sims violated the circuit court's order. Sims however argued that the court lacked subject matter jurisdiction to hear the motion because he had already filed a notice of appeal and the circuit court record had been transmitted to this court. *See* WIS. STAT. § 808.075(3) ("[T]he circuit court retains the power to act on all issues until the record has been transmitted to the court of appeals.").

¶9      On June 5, 2023, the circuit court heard the motion for contempt, issued an oral ruling on June 23, 2023, and incorporated the ruling into a written order on July 11, 2023. The court ordered that: (1) the court had jurisdiction to hear the motion; (2) no later than July 24, 2023, Sims would provide the Defendants with access to business and financial reports of the Church; and (3) the motion for contempt would be held in abeyance until 11 a.m. on July 28, 2023.

¶10     This court issued its decision on Sims' original appeal on October 31, 2023, affirming the August 30, 2022 circuit court order without instructions and remitted the record back to the circuit court on December 11, 2023.

4

¶11    Following remittitur, the Defendants sent a letter to the circuit court explaining that "the Board of Directors needs the records from U.S. Bank and any other financial institutions for the Church to be able to manage the business affairs of the Church to satisfy the directors' fiduciary duties," and requested that the court enter an order permitting the Board to obtain those records. In a document entitled, "Plaintiff's Objection to Defendants' Proposed Order," Sims objected to the proposed order and the continued prosecution of the case. Sims argued that, "in the absence of a remand order or some other clear directive from the appellate court," the circuit court had no authority to act further in the matter given that this court affirmed the dismissal of the case.

¶12    At a hearing on March 4, 2024, the circuit court rejected Sims' argument that it had no authority to enforce its earlier order. After an evidentiary hearing at which the court heard Sims' testimony, it again rejected Sims' argument that it lacked subject matter jurisdiction to hear the matter, characterizing the argument as "absurd and ridiculous".

¶13    On July 29, 2024, the circuit court issued an oral ruling, finding that the court had subject matter jurisdiction and could conduct further proceedings. The rulings were memorialized in an order dated August 6, 2024, permitting further proceedings on the issue of whether Sims had violated the original order and allowing the Defendants to conduct discovery as to that specific issue.

¶14    After discovery was conducted, the circuit court ordered that Defendants file a new motion for contempt addressing the results of discovery. The Defendants did so, alleging that Sims continued to manage the business affairs of the Church in violation of the circuit court's August 2022 order.

¶15    In April 2025, the circuit court granted Defendants' second motion for contempt, finding that Sims intentionally and willfully violated the August 2022 court order.  The court ordered numerous remedial sanctions against Sims for his contempt, including that he repay the Church a sum of $36,066.36 for attorney fees he wrongfully charged to the Church credit card, and pay the individual defendants the sum of $47,269.10 for attorney fees incurred in prosecuting the contempt charge.  Sims now appeals.

## DISCUSSION

¶16    On appeal, Sims makes three arguments: (1) the circuit court did not have subject matter jurisdiction to continue proceedings after this court affirmed the circuit court's original dismissal of the case and remitted it to the circuit court without instructions; (2) the circuit court's interpretation of the August 2022 order went beyond the scope of its plain language; and (3)  the circuit court erroneously exercised its discretion when it found him in contempt and ordered remedial sanctions.

### I.    *Subject Matter Jurisdiction/Competency*

¶17    Sims first argues that the circuit court lacked the necessary subject matter jurisdiction to conduct further proceedings after this court affirmed the dismissal of the case and remitted the matter back to the circuit court without instructions.  He points out that the Defendants' initial motion for contempt was filed after this court affirmed the August 2022 order of dismissal, and after the record was transmitted.  Sims argues that, in the absence of an order for a new trial or some other directive from this court, the circuit court had no jurisdiction to act any further in the case.

¶18     In opposition, the Church points out that, while Sims frames this issue as a lack of subject matter jurisdiction, the proper inquiry is whether the court lacked competency. The Church argues that the circuit court did not lack competency to enforce its order. The Church also argues that, if an order or judgment could not be enforced simply because the adverse party filed an appeal, every adverse party would file an appeal and thereby escape the effects of the order or judgment, regardless of whether the appeal was successful. The Church concludes that the court correctly rejected Sims' argument that it lacked competency to enforce its order, agreeing with the court's characterization of Sims' argument being "absurd and ridiculous."

¶19     At the outset, we agree with the Church's assertion that this issue is one of competency, not of subject matter jurisdiction. The Wisconsin Constitution confers upon the circuit courts "subject matter jurisdiction to entertain actions of any nature whatsoever." *Van Deurzen v. Yamaha Motor Corp. USA*, 2004 WI App 194, ¶9, 276 Wis. 2d 815, 688 N.W.2d 777 (citation omitted). "Subject matter jurisdiction is defined as the power of the court to entertain a certain type of action." *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996). Accordingly, "a circuit court is never without subject matter jurisdiction." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190. "The definition of competency, as accepted in Wisconsin, is the power of a court to exercise its subject matter jurisdiction." *Kohler Co.*, 207 Wis. 2d at 337. "The circuit court's subject-matter jurisdiction attaches when the complaint is filed." *State v. Davis*, 2023 WI App 25, ¶14, 407 Wis. 2d 783, 991 N.W.2d 491 (citation omitted).

¶20     Sims asserts that, once the principal action was dismissed, and that dismissal was affirmed by this court without instructions, "the [circuit] court had

neither the jurisdiction nor the competency necessary" to act on the second motion for contempt. In doing so, Sims primarily relies on our supreme court's opinion in *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97, 303 Wis. 2d 94, 735 N.W.2d 418.

¶21 In *Tietsworth*, plaintiffs sought to reopen their case and amend their complaint after the circuit court had dismissed it in its entirety, and the dismissal had been affirmed on appeal. *Id.*, ¶1. This court had reversed the circuit court's determination that it could not reopen the case to amend the complaint without a clear directive from the court deciding the appeal. *Id.* Our supreme court reversed, holding that, in the absence of a remand order in the mandate line or some other clear directive from the appellate court ultimately deciding the appeal, the circuit court had no authority to reopen the case for an amended complaint after the court of appeals had affirmed the dismissal of the complaint in its entirety on the merits. *Id.*, ¶2.

¶22 In relying on *Tietsworth*, Sims asserts that proceedings post-appeal are permitted only when the appellate court issues explicit orders or directions to conduct further proceedings. Because this court did not issue any explicit orders or directions to the circuit court to conduct further proceedings, Sims concludes, the circuit court lacked the authority to entertain the second motion for contempt.

¶23 However, we conclude that *Tietsworth* is easily distinguished from the present case. In *Tietsworth*, our supreme court looked at whether the circuit court had the authority to *reopen* a case and allow for the amendment of the pleadings. *Id.*, ¶¶22, 25. Here, Defendants did not seek to reopen the case after it was dismissed, nor did they seek to amend their pleadings; these would be clearly in conflict with this court's earlier decision which affirmed the dismissal of the

complaint on the merits. *See id.*, ¶32 ("[T]here can be no amendments in the trial court that conflict with the expressed or implied mandate of the appellate court."). Instead, they simply sought to enforce the August 2022 circuit court order, which not only dismissed the complaint on the merits, but also made substantive rulings as to Sims' authority to continue conducting the business affairs of the Church.

¶24 "An order or judgment which requires specific conduct (either to do, or to refrain from, specific actions) can be enforced by contempt." *Carney v. CNH Health & Welfare Plan*, 2007 WI App 205, ¶17, 305 Wis. 2d 443, 740 N.W.2d 625. In addition, "the courts have inherent power to hold in contempt those who disobey an order of the court." *J.W. v. M.W.G.*, 145 Wis. 2d 308, 312, 426 N.W.2d 112 (Ct. App. 1988). The Defendants' motion for contempt, which sought to enforce the rulings made in the circuit court order, in no way conflicted with this court's affirmation of the dismissal of case on the merits. We therefore reject Sims' argument, and conclude that the circuit court had the authority and competency to entertain the Defendants' second motion for contempt.

## II. Interpretation of the August 2022 Order

¶25 Sims next argues that the circuit court's interpretation of the August 2022 order was incorrect, as the interpretation went beyond the scope of the plain language of the order. He insists that the order did not mention any affirmative duty on his part, and as such, the court's interpretation was incorrect, and any failure on Sims' part to rescind his authority to conduct the business affairs of the Church cannot be the basis for a contempt motion.

¶26 The Church, however, points out that if Sims believed that the order was improper, he could have—and should have—raised that issue in his initial appeal, but he did not. The court interpreted the order as a continuing order

precluding Sims from managing the business affairs of the Church. The Church insists that Sims' interpretation of the order is too narrow, and that the court clearly did not intend for its ruling to be limited to the period of November 15, 2020 to August 30, 2022, which would essentially permit Sims to manage the business affairs of the Church anytime thereafter.

¶27 An appellate court interprets a circuit court's order de novo. *See Walt v. City of Brookfield*, 2015 WI App 3, ¶19, 359 Wis. 2d 541, 859 N.W.2d 115. In interpreting the meaning of an order, the inquiry begins with the plain language of the order and extrinsic evidence is only considered if the order's language is ambiguous. *See id.* If the order's language is unambiguous, the inquiry ends with the language of the order. *Id.*

¶28 We begin with the language of the order. The August 2022 order specifically states:

> (1) The defendants' Motion to Dismiss is granted in its entirety.
>
> (2) The Jerusalem Missionary Baptist Church Bylaws dated June 25, 2019 are the governing by-laws of Jerusalem Missionary Baptist Church.
>
> (3) All conduct engaged in by Donald Sims relating to the general oversight and supervision of the business affairs of Jerusalem Missionary Baptist Church since November 15, 2020, when he was named the Successor Pastor of the Church, is null and void and of no legal effect.
>
> (4) The Board of Directors of Jerusalem Missionary Baptist Church consists of Donald Sims, Antoinette Redd, Virgil Stephens and Della Clipps, who were the directors of the Church just prior to November 15, 2020.
>
> (5) The Amended Complaint … filed by the plaintiff, Donald Sims, as well as this entire case, is hereby dismissed with prejudice and without costs to any of the parties.

¶29    Sims' argument focuses on the language that "[a]ll conduct engaged in by Donald Sims relating to the general oversight and supervision of the business affairs of Jerusalem Missionary Baptist Church since November 15, 2020 … is null and void and of no legal effect."  Sims argues that the order does not mention any affirmative duty, and that to infer from the plain language of the order that he *did* have some affirmative duty would create ambiguity in the order.  Thus, he concludes that the court's interpretation of the order post-appeal was incorrect and went beyond the scope of the plain language.  He therefore insists that any failure on his part to act affirmatively cannot be the basis for a contempt order.

¶30    We disagree with Sims' argument.  In interpreting the plain language of the August 2022 order, it is clear that the order was intended not only to invalidate the actions taken by Sims as Successor Pastor since November 15, 2020, but also to enjoin him from managing the business affairs of the Church going forward.  This is evidenced by the fact that the court specifically ruled that the 2019 bylaws were the governing bylaws of the Church, and, as previously noted herein, the 2019 bylaws placed the power of managing the Church business affairs with the Board of Directors, not with the Successor Pastor.  As the United States Supreme Court stated,"[i]t does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined.  Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law[.]"  ***McComb v. Jacksonville Paper Co.***, 336 U.S. 187, 192 (1949); *see also* ***Carney***, 305 Wis. 2d 443, ¶17 (stating that the law does not require "that an order contain the specific term 'enjoin' or 'injunction' to allow the court to use contempt powers to enforce its orders").  Sims asks this court to interpret the August 2022 order in a way that

11

would deprive the order of the power to effectuate its clear purpose, and we decline to do so.

### III. Imposition of Remedial Sanctions, Exercise of Discretion

¶31 Finally, Sims argues that the circuit court failed to properly exercise its discretion when it found him in contempt of court. He points out that the court found him in contempt because it believed that he willfully and intentionally violated the August 2022 order. Specifically, the court determined that Sims had signed a corporate resolution for borrowing and pledging assets with U.S. Bank, charged his attorney fees for this case to the Church's credit card, authorized a pay increase for himself, and authorized Christmas bonuses for two Church employees, all after the August 2022 order had been entered.

¶32 Sims also challenges the circuit court's April 2025 post-appeal findings, pointing out that "the court failed to consider that the members of the Church agreed the Church would pay Donald Sims' attorney fees, and that Donald Sims did not instruct anyone to pay the fees." Sims further points to testimony stating that he was not the one who made the decision to raise his weekly compensation, nor was he involved in the decision to issue any employee bonus checks.

¶33 In opposition, the Church argues that the circuit court did not erroneously exercise its discretion in finding Sims in contempt. The Church argues that, based on the evidence presented, as well as weighing Sims' credibility during his testimony at the evidentiary hearing, the court found that Sims intentionally and willfully violated the August 2022 order by continuing to manage the business affairs of the Church. This finding, the Church argues, was a reasonable exercise of discretion.

12

¶34    The Church further argues that the remedial sanctions issued were appropriate for Sims' misconduct and were authorized by WIS. STAT. § 785.04(1), and case law.  The circuit court entered various remedial sanctions against Sims, including (1) that he send a letter to U.S. Bank advising that he has no authority to manage the business affairs of the Church, including issuing checks; (2) ordering Sims to cease and desist from handling any business affairs of the Church, including issuing checks and using the credit card issued to him in the name of the Church; (3) ordering him to direct Church employees to cease and desist from handling any business affairs of the Church, including issuing checks; (4) ordering him to reimburse the Church for the attorneys' fees charged to the Church credit card for his attorney fees for defending the contempt motion; and (5) ordering him to reimburse the Defendants for the attorneys' fees they incurred in prosecuting the contempt motion.

¶35    We review a circuit court's use of its contempt power under the erroneous exercise of discretion standard.  *City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995).  "A court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational and legally sound conclusion." *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515.

¶36    As stated previously herein, "[a]n order or judgment which requires specific conduct (either to do, or to refrain from, specific actions) can be enforced by contempt."  *Carney*, 305 Wis. 2d 443, ¶17.  "If a court finds contempt under WIS. STAT. § 785.01(1)(b) has occurred, then the court must consider WIS. STAT. § 785.04(1), which provides for remedial sanctions." *Id.*, ¶24.  "If a party has promptly rectified all or part of a loss that occurred because of violating the order,

the [circuit] court should weigh that in exercising its discretion as to whether a sanction is required." *Id.*

¶37    In this case, there was ample evidence presented by the Church demonstrating that Sims had violated the August 2022 order, including that:

- On October 6, 2022, 37 days after the order was entered, Sims executed a Corporate Resolution for Borrowing and Pledging Assets on behalf of the Church for U.S. Bank, representing that he was President of the Church; certifying that he was authorized by the Church to borrow money from the bank and to pledge the Church's assets to the bank as security; and representing that two Church employees were "officers" of the Church.

- Sims never told U.S. Bank that neither he nor the aforementioned Church employees had the authority to issue checks on behalf of the Church, and continued to have the employees do so.

- On September 18, 2022, 19 days after the order was entered, Sims increased his compensation from the Church from $500 per week to $600 per week.

- On December 18, 2022, less than 4 months after the order was entered, Sims authorized Christmas bonuses to the aforementioned Church employees.

- Sims used the Church's credit card to make 22 payments for his personal attorneys' fees between December 5, 2022 and November 1, 2024 in the total amount of $36,066.36. When asked what

authority he had to use the Church's credit card to pay his personal expenses, Sims testified that his name was on it.

¶38     Based on the evidence presented at the April 2025 hearing, and weighing Sims' credibility, the circuit court found that Sims had intentionally and willfully violated the August 2022 order by continuing to manage the business affairs of the Church. The court thereby imposed specific remedial sanctions designed to end Sims' continued unlawful control over the Church's business affairs.

¶39     We cannot conclude that the circuit court erroneously exercised its discretion in entering the April 2025 contempt order. The court reviewed the parties' briefs and held an evidentiary hearing at which Sims himself testified. It was within the court's discretion to weigh the credibility of the parties and to determine whether the alleged actions taken by Sims violated the court order. The court's remedial sanctions were specifically designed and tailored to bring Sims into compliance with the August 2022 order and end Sims' control over the business affairs of the Church.

## CONCLUSION

¶40     For the foregoing reasons, we affirm the circuit court order finding Sims in contempt of court and ordering remedial sanctions.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.